**Ralph G. MENDENHALL,**
**Plaintiff-Appellee.**

v.

**M/V TOYOTA MARU NO. 11, her boilers, tackle, engines, appurtenances, etc., et al., Defendants-Appellees,**

v.

**PANAMA CANAL COMPANY,**
**Movant-Appellant.**

No. 75–2602.

United States Court of Appeals,
Fifth Circuit.

April 20, 1977.

Dwight A. McKabney, William H. Beatty, Ray J. McQuary, Balboa Heights, Canal Zone, for movant-appellant.

DeCastro & Robles, Woodrow DeCastro, Betty H. Olchin, Balboa, Canal Zone, for plaintiff-appellee.

Before WISDOM, CLARK and RONEY, Circuit Judges.

RONEY, Circuit Judge:

The Panama Canal Company seeks to intervene in this suit between one of its employees and the third party allegedly responsible for his injuries. It desires to recover sums advanced by it to the employee under the federal compensation statute from any judgment or settlement which the employee secures. The district court, holding that the Canal Company did not have standing to demand this reimbursement, denied intervention. Concluding the power to seek reimbursement of such funds has been delegated to the Panama Canal Company and therefore the Company is entitled to intervene as a matter of right, we reverse.

The plaintiff is employed as a pilot by the Panama Canal Company.[1] In August 1971, while aboard the vessel TOYOTA MARU NO. 11, he was seriously injured. The plaintiff commenced this action against the owners of that ship in order to recover for his injuries. Simultaneously, however, the Panama Canal Company, pursuant to the provisions of the Federal Employees' Compensation Act (F.E.C.A.), 5 U.S.C.A. §§ 8101 *et seq.*, began paying the plaintiff compensation for his work injuries. The sums advanced by the Company to date total over $7500.

After the suit was commenced, the plaintiff and the vessel owners came to an understanding that the suit could be settled for approximately $30,000.[2] When the Panama Canal Company learned of this development, it sought to intervene as of right, *see* F.R.Civ.P. 24(a), to ensure that it could recover the amounts it had already ad-

---

1. The Panama Canal Company was created by Congress "[f]or the purposes of maintaining and operating the Panama Canal and of conducting business operations incident thereto and incident to the civil government of the Canal Zone, . . ." 2 C.Z. Code § 61(a) (1963). It is "a body corporate and . . . an agency and instrumentality of the United States." 2 C.Z. Code § 61(a)(1963). It also has the power to sue and be sued, 2 C.Z. Code § 65 (1963), and it employs, *inter alia*, pilots to conduct vessels through the canal. *See* 35 C.F.R. § 105.1.

2. This settlement is referred to in the Canal Company's complaint in intervention. That pleading alleges that

   plaintiff and defendant have agreed to settle this action, without trial, and the same is about to be dismissed with prejudice. . . [U]nder the terms of the said settlement, plaintiff Mendenhall recovered or will recover the sum of $30,500 from defendants.

   For the purposes of passing upon the Company's right to intervene, these allegations are accepted as true. Wright and Miller, Federal Practice and Procedure: Civil § 1914, p. 570.

vanced to plaintiff.[3] The district court denied intervention. This appeal followed.

A brief examination of the federal scheme to compensate workers injured on the job is necessary for a clear understanding of the issue in this case. Under 5 U.S.C.A. § 8147 an Employees' Compensation Fund has been created in the Treasury of the United States.[4] When federal employees are injured on the job, usually the compensation to which they are entitled under federal law is advanced to them from this fund. Subsequently, the federal agency employing the injured party is required to reimburse the fund for amounts paid to the particular employee. It obtains the funds for reimbursement either by requesting such additional appropriations as are necessary from Congress in its next annual budget, or from funds under its control if it is not dependent on annual appropriations.[5] It was disclosed on oral argument, however, that the Panama Canal Company does not follow this precise procedure. Instead, concluding that less bookkeeping is involved, the Company pays directly to any injured employee the amount to which he is statutorily entitled. Thus it never incurs any obligation to reimburse the fund. It is able to do this because its activities in running the Panama Canal are revenue generating, providing it with the necessary resources which other Government agencies may lack.

The statutory scheme anticipates that in some instances an employee will be paid with federal moneys, but will then recover for his injuries from a private party. It provides for that contingency in 5 U.S.C.A. § 8132, which read as follows on the date of the accident here involved:

> If an injury or death for which compensation is payable under this subchapter is caused under circumstances creating a legal liability in a person other than the United States to pay damages, and a beneficiary entitled to compensation from the United States for that injury or death receives money or other property in satisfaction of that liability as a result of suit or settlement by him or in his behalf, the beneficiary, after deducting therefrom the costs of suit and a reasonable attorney's fee, shall refund to the United States the amount of compensation paid by the United States  . . . ."

All parties to this litigation agree that some agency or instrumentality of the United States is entitled to begin a legal action, or intervene in an ongoing action, to secure the refund of the amount of compensation paid, as contemplated by § 8132. The sole question before this Court is whether the Panama Canal Company is such a party. If it is, it has an interest in the subject matter of the lawsuit and the district court erred in denying intervention.

**3.** Rule 24(a) permits intervention "when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest  . . . ."

**4.** 5 U.S.C.A. § 8147(a) reads in pertinent part:
> There is in the Treasury of the United States the Employees' Compensation Fund which consists of sums that Congress, from time to time, may appropriate for or transfer to it, and amounts that otherwise accrue to it under the subchapter or other statute.  . .

**5.** As most recently amended, the key provision of 5 U.S.C.A. § 8147(b) provides:
> . . . each agency and instrumentality shall include in its annual budget estimates for the fiscal year beginning in the next cal-

endar year a request for an appropriation in an amount equal to the costs [of benefits paid to its employees]. Sums appropriated pursuant to the request shall be deposited in the Treasury to the credit of the Fund within 30 days after they are available. An agency or instrumentality not dependent on an annual appropriation shall make the deposit required by this subsection from funds under its control.  . .

The Company is empowered to prescribe tolls for the use of the Canal, 2 C.Z. Code § 411 (1963), and such tolls are paid to the Treasurer of the Company, 35 C.F.R. § 133.75. It is therefore not dependent on annual appropriations. Since it is also statutorily obliged to reimburse the Fund for payments made by it on the Company's behalf, 2 C.Z. Code § 69 (1963), such reimbursement would come from its revenues rather than from special appropriations.

We note initially that 5 U.S.C.A. § 8145 gives the Secretary of Labor generally the power to administer the entire compensation subchapter. As to the administration for the Canal Zone, however, 5 U.S.C.A. § 8146 provides that: "The President, from time to time, may transfer the administration of this subchapter—(1) so far as employees of the Canal Zone Government and of the Panama Canal Company are concerned to the Governor of the Canal Zone . . . ." By Executive Order 2455, September 16, 1916, this designation was effected.[6] The question is whether through this designation and the action of the Governor the Company is empowered to intervene in these types of suits.

The first provision which has a bearing on this question is 2 C.Z. Code § 64 (1963), which provides that the Governor of the Canal Zone shall serve *ex officio* as the president of the Panama Canal Company.[7] Because of the close relationship between the Canal Zone government and the Company, we assume that when Congress authorized the President to delegate administrative powers under the statute to the Governor, it recognized the dual capacity of the Governor, and intended that he could bring actions to recover funds in the name of and for the Canal Company.

In opposing intervention, the plaintiff argues that there has been no redelegation from the Governor of the Zone to the Canal Company. In support of this allegation he cites the Panama Canal Company Personnel Manual.[8] We are informed that Chapter 810, section 1–2(a) of that Manual contains regulations of the Governor providing that the "Comptroller of the Panama Canal Company, acting on behalf of the Governor, shall exercise such authority as is required to administer the injury compensation provisions of the U.S.Code in their application to employees of the Canal Zone Government and the Panama Canal Company, . . . ." Plaintiff maintains that this delegation is not to the Company and thus cannot support an unconditional right of intervention. Even assuming that the contents of this Manual are properly before this Court, this delegation could not be understood to be to the Comptroller of the Company personally. Since the Comptroller is responsible to the Canal Company, is paid by the Canal Company and would perform on Canal Company time for no additional compensation, the delegation to the Comptroller, if valid, is a *de facto* delegation of authority to the Company itself.

Further, 2 C.Z. Code § 69 (1963), provides that "[t]he Panama Canal Company shall reimburse the Employees' Compensation Fund . . . for the benefit payments made to the Company's employees, . . . ." The duty to reimburse the fund would only arise, of course, where employee compensation was initially advanced by the fund. Where such compensation is paid by the Company, it is not the fund which has an interest in recovering the double payments from the employee, but rather the Company itself. Where the Company is the governmental arm with the real financial

---

**6.** President Wilson provided in that order "[t]hat the administration of the Act entitled, 'An Act to provide compensation for employees of the United States suffering injuries while in the performance of their duties, and for other purposes,' approved September 7, 1916, so far as employees of The Panama Canal and of the Panama Railroad Company are concerned, is hereby transferred to the Governor of the Panama Canal." By subsequent legislation the Panama Canal was redesignated the Canal Zone Government and the Panama Railroad Company was redesignated the Panama Canal Company. Act of September 26, 1950, ch. 1049, § 2(a), 64 Stat. 1038. This executive order is still effective.

**7.** The Governor of the Canal Zone is appointed by the President, subject to Senatorial confirmation, for a four year term. 2 C.Z. Code § 32 (1963). 2 C.Z. Code § 64 (1963) provides:

The Governor shall serve, ex officio, as president of the Panama Canal Company.

**8.** Although the contents of the Panama Canal Company Personnel Manual are quoted and relied upon in plaintiff's brief, no copy of that Manual was introduced in evidence. We find it unnecessary to consider whether the Manual constitutes an official source of law for the Canal Zone, thus permitting us to take judicial notice of its contents, since we conclude that it does not lend any support to plaintiff's position.

interest in securing compensation there would be little point in erecting artificial barriers to allowing it to intervene in this lawsuit.

Interestingly, although not cited in either brief, an almost identical situation was presented to the same district judge in *Price v. Pretto*, 335 F.Supp. 1325 (D.C.Z. 1972). There, a Canal Company employee was injured by the negligence of a third party. Pending a judgment or settlement, the Company advanced compensation to the plaintiff-employee under the F.E.C.A. When it became apparent that a settlement was imminent, the Company sought to intervene in the civil suit between the employee and the tortfeasor to secure a refund of the funds advanced by it. Judge Crowe permitted the Company to intervene, and in discussing the administration of F.E.C.A. stated "[t]he Governor has delegated such administration to the Panama Canal Company." 335 F.Supp. at 1326. The appellees here argue no facts which would suggest that the conclusion in *Price* was erroneous.

Finally, this conclusion is supported by *Sandoval v. Misui Sempaku K.K. Tokyo*, 460 F.2d 1163 (5th Cir. 1972). That case also concerned a Canal Company employee who recovered from a third party for his injuries after receiving F.E.C.A. payments from the Company. The Canal Company had intervened in that suit to secure reimbursement under § 8132 and this Court discussed the computation of the sum to which the Company was entitled without once questioning the Company's right to have intervened initially. Furthermore, Judge Ainsworth remarked in footnote 6 of the Court's opinion that "[t]he administration of the F.E.C.A. for employees of the Canal Zone Government and the Panama Canal Company was transferred by the President of the United States to the Government of the Canal Zone by Executive Order 2455, September 15, 1916. The Governor has delegated administration of the Act to the Panama Canal Company, . . . ." The plaintiff main-

tains that this issue was not fully briefed and argued in *Sandoval,* and that the conclusion expressed therein should not therefore affect the result in the instant case. Whether or not *Sandoval* controls this panel, *see Puckett v. Commissioner,* 522 F.2d 1385 (5th Cir. 1975); *United States v. Lewis,* 475 F.2d 571, 574 (5th Cir. 1972), the case supports our view that the law of this Circuit should be that the cumulative effect of the statutes, orders and regulations promulgated with respect to F.E.C.A. administration had the effect of delegating sufficient power to the Company so as to entitle it to intervene as of right in proceedings such as this one.

On remand, any difference between the plaintiff and the Canal Company as to the appropriateness of reductions in repayments to the Company to account for attorney's fees can be fully litigated. The order of the district court denying intervention is reversed and the case remanded with instructions to allow the Company to intervene.

REVERSED AND REMANDED.