TRAVELERS INSURANCE
CO., Appellant,

v.

Mabel D. HADEN and District of
Columbia, Appellees.

TRAVELERS INSURANCE
CO., Appellant,

v.

Jesse JONES and District of
Columbia, Appellees.

Nos. 13660, 13661.

District of Columbia Court of Appeals.

Argued May 15, 1979.

Decided Aug. 20, 1980.

Thomas Pace, Washington, D. C., with whom Edward J. Lopata, Washington, D. C., was on the brief, for appellant. Richard W. Boone, Washington, D. C., also entered an appearance for appellant.

Mabel D. Haden, pro se.

David P. Sutton, Deputy Corp. Counsel, Washington, D. C., with whom Louis P. Robbins, Acting Corp. Counsel, Washington, D. C., at the time the brief was filed, and Richard W. Barton, Deputy Corp. Counsel, Washington, D. C., were on the brief, for the District of Columbia. Dennis McDaniel, former Deputy Corp. Counsel, Washington, D. C., also entered an appearance for the District of Columbia.

Before KELLY, KERN and GALLAGHER, Associate Judges.

GALLAGHER, Associate Judge:

This appeal raises questions concerning the rights of a workmen's compensation carrier where the injured employee compromises his claim against the alleged third party tort–feasor without the carrier's consent. The insurer, Travelers Insurance Company ("Travelers"), asserts the right to (1) obtain reimbursement of compensation benefits paid from Jones and from the District of Columbia, the alleged tort–feasor, and (2) impose a duty on Jesse Jones, the employee, and his attorney, Mabel D. Haden, to transmit the settlement proceeds to the carrier. Finding both claims without merit, the trial court entered summary judgments in favor of the District, Mr. Jones, and Attorney Haden. We reverse in part.

### I.

Jesse Jones fell into a manhole while delivering milk to a District of Columbia public school in the course of his employment for Southland Corporation ("Southland"). Travelers, as Southland's workmen's compensation carrier, paid Mr. Jones $4,254.76 for injuries sustained without a formal award.[1] Within six months after his fall, Mr. Jones filed suit against the District of Columbia as a third party tort–feasor. This claim was settled on February 12, 1974; Mr. Jones agreed to accept $1,500 in settlement,[2] and his action was dismissed with prejudice.

At this point, the procedural threads become rather tangled. Travelers brought an action against the District of Columbia and Mr. Jones seeking to recover the settlement proceeds on a theory of equitable lien. The trial court granted the District's motion to dismiss, and this ruling was affirmed on appeal in *Travelers Insurance Co. v. District of Columbia*, D.C.App., 382 A.2d 269 (1978). While this appeal was pending, Travelers brought separate actions against the District and Attorney Haden. Travelers sought to recover $4,254.76 (the amount of benefits it had paid Jones) from the District under a right of subrogation. The action against Attorney Haden was based on an alleged breach of an oral agreement to protect its lien, by failure to remit the settlement proceeds to Travelers.

The trial court entered summary judgment in favor of the District on the grounds (1) Travelers failed to give written notice of the claim within six months as required by D.C. Code 1973, § 12–309, and (2) Travelers' sole remedy was against Jones, not the District, for recovery of the proceeds. The remaining actions against Attorney Haden and Jones were consolidated, and proceedings stayed pending outcome of the appeal in *Travelers Insurance Co. v. District of Columbia, supra*. After that appellate decision, the trial court granted the motions of Jones and Haden for summary judgment.

### II.

The appeal before us concerns the propriety of the summary judgments entered in

---

1. The benefits were paid pursuant to the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901 *et seq.* (1978), made applicable to the District of Columbia by D.C. Code 1973, §§ 36–501, –502.

2. The additional sum of $2,000 was allocated to Mr. Jones' wife for loss of consortium.

favor of the District of Columbia, Attorney Haden and Mr. Jones. The actions will be considered separately since distinct issues are involved in each.

### A. Travelers' Action Against the District of Columbia

In this action, Travelers seeks indemnification from the District of Columbia, whose negligence allegedly caused Mr. Jones' accident. The right here asserted is essentially one of subrogation. It is Travelers' contention that the settlement did not bar a subrogation suit against the District for recovery of compensation paid to Mr. Jones. In support, Travelers relies principally upon *Travelers Insurance Co. v. District of Columbia, supra* and *Liberty Mutual Insurance Co. v. Ameta & Co.,* 564 F.2d 1097 (4th Cir. 1977). We find Travelers' reliance misplaced, and conclude that the settlement foreclosed the carrier's right of subrogation against the District.

Under the Longshoremen's and Harbor Workers' Act ("the Act"), an insurance carrier who pays compensation benefits to an injured employee pursuant to an award is subrogated to the employer's rights against negligent third parties. 33 U.S.C. § 933(h) (1978). Where, as here, benefits are paid without an award, a right of subrogation is not expressly created by statute.[3] However, the courts have long recognized a subrogation right based upon equitable principles. *See, e. g., The Etna,* 138 F.2d 37, 39 (3rd Cir. 1943); *Davillier v. Cavn Venezuelan Line,* 407 F.Supp. 1234, 1236 (E.D.La. 1976). *See also Allen v. Texaco, Inc.,* 510 F.2d 977 (5th Cir. 1975) (the subrogation right where there is no award is a judicial creature).

■ There appears to be some confusion among the parties as to the nature of the carrier's subrogation right. The insurer is subrogated to the "employer's implied right of reimbursement out of an employee's third party recovery." *Petition of Sheffield Tankers Corp.,* 222 F.Supp. 441, 443 (N.D.Cal.1963). *See also The Etna, supra* at 41. To protect its right to reimbursement, the insurer may intervene in the employee's suit, even where compensation was paid without entry of a formal compensation award. *Allen v. Texaco, supra* at 979–80. *See also International Terminal Operating Co. v. Waterman Steamship Co.,* 272 F.2d 15, 17 (2d Cir. 1959), *cert. denied,* 362 U.S. 919, 80 S.Ct. 671, 4 L.Ed.2d 739 (1960). Where the carrier chooses not to intervene in the employee's action, its subrogation right may still be protected by notification to the third party. If Travelers had filed notice of payment of benefits prior to settlement and claimed a lien upon any recovery made, the trial court could have fixed the amount of the lien and directed payment from the settlement proceeds. *See, e. g., Albert v. Sao Paulo,* 552 F.2d 1139 (5th Cir. 1977). *See also National Emblem Insurance Co. v. Gillingham,* 241 So.2d 707, 709 (Fla.Dist.Ct.App.1970).[4] Here Travelers failed to notify the District of its subrogation claim. In the absence of notification, we decline to shift to the District the entire burden of protecting Travelers' right to a portion of any judgment or settlement.

Travelers cites *Liberty Mutual Insurance Co. v. Ameta & Co., supra,* for the principle that the employee's release of the third party does not bar a subrogation suit by the insurance company for the full amount of the benefits paid. We find *Liberty Mutual* distinguishable on its facts. In that case, no actual litigation was ever filed by the employee; a release of the employee's claim was executed for consideration. Since the employee never filed suit, his claim was

---

**3.** Under the statute, compensation must be paid promptly without an award unless the employer controverts liability. 33 U.S.C. § 914(a).

**4.** In that case, the Florida court indicated the proper procedure to protect the carrier's right of subrogation when the injured employee initi-ates an action against a third party tort–feasor is to file in the suit a notice of payment of compensation and medical benefits to the employee, which notice is then recorded and thereafter constitutes a lien upon any judgment recovered to the extent determined by the court.

assigned to the employer by operation of law. *See* 33 U.S.C. § 933(b). Thus, the release had no effect on the carrier's rights to sue for indemnification.

■ Several state courts, most notably Florida, have held that a settlement does not bar a subsequent action by the insurer against the third party to recover the extent of benefits it must pay. *See, e. g., Dickerson v. Orange State Oil Co.*, 123 So.2d 562 (Fla.Dist.Ct.App.1960). Under this view, the third party, who is charged with notice of the employer's subrogation rights, may not evade liability to the employer as subrogee by settlement with the employee. *See generally* 2A Larson, The Law of Workmen's Compensation, § 74.17. This approach has not prevailed under the Federal Act. The federal courts have treated the carrier's subrogation rights as derivative ones where the employee seeks recovery from a third party. Under § 933(h) of the Act, the carrier is subrogated to the employer's rights against negligent third parties. Under § 933(b), however, assignment to the employer of the employee's claim occurs only if the employee fails to bring an action against the third party within the prescribed time. Thus, the carrier has no right of subrogation against the third party after the injured employee sues on his claim, and collects for the negligent conduct. *See Travelers Insurance Co. v. District of Columbia, supra* at 271.[5] "The fact that [the] recovery took the form of a settlement, rather than a judgment, is irrelevant from the standpoint of the carrier's right of subrogation," *Davillier v. Cavn Venezuelan Line, supra* at 1238. We conclude summary judgment was properly granted in favor of the District of Columbia.[6]

### B. *Travelers' Action Against Jesse Jones*

■ As we have indicated, Travelers retained a right to reimbursement out of the settlement proceeds. The employer's or insurer's interest in recoupment, if the employee ultimately succeeds in recovering from the third party, is protected by a lien on the proceeds. *See, e. g., Potomac Electric Power Co. v. Wynn*, 120 U.S.App.D.C. 13, 16, 343 F.2d 295, 298 (1965); *Morauer & Hartzell, Inc. v. Woodworth*, 142 U.S.App. D.C. 40, 42, 439 F.2d 550, 552 (1970), *cert. dismissed sub nom. McClanahan v. Morauer & Hartzell, Inc.*, 404 U.S. 16, 92 S.Ct. 170, 30 L.Ed.2d 136 (1971). By imposing an equitable lien upon the judgment or settlement, courts have sought to prevent a double recovery by the employee. *See, e. g., Allen v. Texaco, Inc., supra* at 982. *See also* S.Rep.No. 428, 86th Cong., 1st Sess. ——— (1959), *reprinted in* [1959] U.S.Code Cong. & Admin.News, p. 2135. Thus, the employee must reimburse the insurer to the extent of payments received. *See, e. g., Oleszczuk v. Calmar S.S. Corp.*, 163 F.Supp. 370 (D.Md. 1958), *rev'd on other grounds sub nom. Calmar S.S. Corp. v. Nacirema Operating Co.*, 266 F.2d 79, *cert. denied*, 361 U.S. 816, 80 S.Ct. 56, 4 L.Ed.2d 62 (1959) (fact that insurer's payments were made without an award did not relieve longshoremen of duty to reimburse insurer out of his recovery). The employer or his carrier, if substituted, remains liable for any amount by which the recovery falls short of the prescribed compensation. 33 U.S.C. § 933(f).

Since we recognize Travelers' lien on the settlement proceeds,[7] an additional question is presented: whether the employer (carri-

---

5. In *Travelers Ins. Co. v. District of Columbia, supra*, this court considered the narrow question of whether the insurance carrier could obtain reimbursement of the settlement proceeds by virtue of some independent nonstatutory remedy rather than by way of its rights as a subrogee. We indicated that an employer who disburses compensation without an award may pursue any nonstatutory rights he may have against third party wrongdoers. On the facts, however, Travelers did not establish the "independent wrong" alleged: failure to honor the carrier's equitable lien arising from the

compensation payments. We refused to "impose an equitable lien on property owing to, although not yet in the possession of the employee, where the lien was not affirmatively asserted in the settlement or litigation proceedings prior to payment." *Id.* at 274.

6. There is no need to reach the § 12–309 notice issue.

7. Appellant does not contend that it is entitled to reimbursement from that portion of the settlement proceeds allocated to Mrs. Jones for

er) was released from all liability by the unauthorized settlement, so as to require Mr. Jones to remit the full amount of compensation paid ($4,254.76).

 Travelers' argument that Mr. Jones should forfeit all benefits is based upon 33 U.S.C. § 933(g).[8] Section 933(g) provides for release of the employer's liability when the claim against the third party is compromised without the employer's consent.[9] If the compromise of the third party claim is less than the statutory compensation, the employer will be liable for the difference only if the settlement is made with his written approval. Thus, "the Act prevents recovery by conclusively presuming prejudice to the claimant's employer, without requiring proof of actual prejudice. This is only proper, because when a claimant makes settlement of an unliquidated claim, without the employer's consent, he had undertaken to fix the amount of recovery in the action which would have inured to the employer's benefit." *Bell v. O'Hearne*, 284 F.2d 777, 780 (4th Cir. 1960). *See also Morauer & Hartzell, Inc. v. Woodworth, supra*, 142 U.S.App.D.C. at 42, 439 F.2d at 552; *Marlin v. Cardillo*, 68 App.D.C. 201, 95 F.2d 112 (1938).

 The inclusion of a statutory sanction indicates that Congress foresaw, and sought to prevent, prejudicial settlements by the employee. To this extent, the Act balances the employee's right to seek damages and the possibility of hardship to the employer and his carrier. Section 933(g) does not apply to the circumstances before us, however. Since § 933(g) excuses the employer's liability under § 933(f),[10] it has been applied primarily to actions by the employee to secure deficiency compensation from his employer (*e. g.*, in excess of the third party recovery). *See, e. g., Chapman v. Hoage*, 296 U.S. 526, 56 S.Ct. 333, 80 L.Ed. 370 (1936); *Bell v. O'Hearne, supra; Marlin v. Cardillo, supra. See also Morauer & Hartzell, Inc. v. Woodworth, supra* (modification of compensation award for additional benefits barred by compromise).

The limited application of § 933(g) results from its statutory evolution. Prior to the 1959 amendments, the employee was forced to elect whether to sue a third party for damages or to accept compensation. *See generally Potomac Electric Power Co. v. Wynn, supra*. Sections 933(f) and (g) predated the 1959 amendments and, thus, contemplated a situation where the employee elected to recover damages first. In such a case, the employee reserved the right under § 933(f) to any deficiency between the sum recovered and the amount allowable under the provisions of the Act. Where the employee elected to sue, the employer had the

---

loss of consortium. *See* Brief for Appellant at 24.

**8.** Section 933(g) provides:

If compromise with such third person is made by the person entitled to compensation or such representative of an amount less than the compensation to which such person or representative would be entitled to under this chapter, *the employer shall be liable for compensation as determined in subdivision (f) of this section only if the written approval of such compromise is obtained from the employer and its insurance carrier by the person entitled to compensation or such representative at the time of or prior to such compromise on a form provided by the Secretary and filed in the office of the deputy commissioner* having jurisdiction of such injury or death within thirty days after such compromise is made. [Emphasis supplied.]

**9.** The definition of "compromise" has generated discussion in several cases. *See, e. g., Banks v. Chicago Trimmers Ass'n, Inc.*, 390

U.S. 459, 88 S.Ct. 1140, 20 L.Ed.2d 30 (1968) (judicially ordered remittitur not a compromise); *Morauer & Hartzell, Inc. v. Woodworth, supra.* The crucial factor appears to be determination of damages by mutual agreement or negotiation between the parties, rather than by the independent evaluation of a trial judge. *Banks v. Chicago Grain Trimmers Ass'n, Inc., supra*, 390 U.S. at 467, 88 S.Ct. at 1145.

**10.** Section 933(f) provides:

If the person entitled to compensation institutes proceedings within the period prescribed in subdivision (b) of this section *the employer shall be required to pay as compensation under this chapter a sum equal to the excess of the amount which the Secretary determines is payable on account of such injury or death over the amount recovered against such third person.* [Emphasis supplied.]

legal right to suspend payment of compensation begun voluntarily. *See Nacirema Operating Co. v. Anduzzi,* 185 F.Supp. 344 (E.D.Pa.1960). Under § 933(g), if the employee settled without the employer's consent he lost his right to any deficiency, and was left with the settlement in lieu of statutory benefits. The current statute, as worded, encompasses a "person entitled to compensation."

We find Sections (f) and (g) relevant to the employer's liability for *further* payments, not to the situation where, as here, the employee has received benefits without an award. Two factors militate in favor of this conclusion. First, the legislative history of the 1972 amendment of § 933(g) indicated the form of written approval necessary "to avoid discharging the employer from *further* liability under the Act." H.R. Rep.No. 92–1441, 92d Cong., 2d Sess. —— (1972), *reprinted in* [1972] U.S.Code Cong. & Admin.News, pp. 4698, 4709 [emphasis supplied]. Second "[i]n the absence of language plainly demanding it, a construction is not to be favored which visits a forfeiture on the employee or his dependent and gives a windfall to the insurance carrier." *Bell v. O'Hearne, supra* at 781. We are reluctant to imply a forfeiture of benefits received, in light of the Act's intent to insure the employee's receipt of, at least, the medical benefits and compensation prescribed. *See Ballwanz v. Jarka Corp. of Baltimore,* 382 F.2d 433 (4th Cir. 1967).

■■■ Absent a statutory consent requirement, the determinative question is whether the compromise prejudiced the employer by impairment of his subrogation rights. *See, e. g. Chapman v. Hoage, supra* (employee who elects to proceed against third person must prosecute claim in a manner and to an extent which will avoid prejudice to insurer's right of subrogation).[11] Section 933(g) also acknowledges that "to the extent that the employee compromises his third party claim and settles for less than he would recover upon a full judicial

determination, the employer is to that degree prejudiced." *Morauer & Hartzell, Inc. v. Woodworth, supra,* 142 U.S.App.D.C. at 42, 439 F.2d at 552. Thus, apart from the statutory provision, the same result would be reached under general suretyship principles as to the necessity for employer consent to settlement. The obligation of the workmen's compensation carrier may be discharged by release or relinquishment of the principal liability which deprives him of his right of subrogation. *See Chapman v. Hoage, supra,* 296 U.S. at 529, 56 S.Ct. at 334. We conclude that the failure to secure consent constitutes a defense to further liability, not a means of reneging on benefits paid, particularly where, as here, the insurer was less than vigilant in protecting its subrogation rights before settlement.

The summary judgment in Jesse Jones' favor was, therefore, improperly granted.

### C. *Travelers' Action Against Attorney Haden*

Travelers seeks in this action to impose a duty upon the employee's attorney to transmit settlement proceeds directly to the insurance carrier. The claim asserted by Travelers is for breach of an implied contract to protect its compensation lien. Travelers points to correspondence with Attorney Haden notifying her of the compensation payments as evidence of an implied contract.

■■■ In general, an attorney may be liable for failure to protect a lien imposed on his client's settlement proceeds, where he expressly agrees with the client and the creditor to do so. *See Heffelfinger v. Gibson,* D.C.App., 290 A.2d 390 (1972) (written agreement by attorney to withhold sums from any recovery to reimburse client's doctor for services rendered). To protect its interest, the insurance carrier in a workmen's compensation case may obtain from the employee's attorney an agreement to retain from any judgment an amount equal

---

11. The question in *Chapman* was whether the abandonment by plaintiff of his suit after the running of the statute of limitations was so prejudicial to the insurer's right of subrogation as to operate as a discharge of its liability.

to the employee's compensation payments. *See International Terminal Operating Co., Inc. v. Waterman Steamship Co., supra* at 18 n.6. Under the circumstances of this case, however, we do not find a wrongful dispersal of the funds.

An analogous case is *United States v. Limbs*, 356 F.Supp. 1004 (D.Ariz.1973). In *Limbs*, the United States sued two injured federal employees and their attorney to obtain reimbursement from the proceeds of a third party settlement for amounts paid under the Federal Employees Compensation Act. Although the attorney received notice of the government's claim to reimbursement, he did not incur liability by distributing the settlement proceeds to his client. As the court stated, the government argument "flies in the face of one elementary lesson that every lawyer quickly learns: that he impliedly agrees to turn a recovery over to his client." *Id.* at 1015. Correspondence between the parties indicated that the attorney's refusal to reimburse the United States stemmed from a good faith, if mistaken, belief that the government was not entitled to the funds, and that he had never been required by the government to assign any of his client's rights nor to disburse any funds.

■ To establish an implied contract, Travelers relies solely upon letters sent to Attorney Haden, and upon asserted conversations with her. It is Travelers' position that the correspondence put Attorney Haden on notice of the insurance lien. However, Travelers does not proffer any written response by Attorney Haden to Travelers' request for acknowledgement of the lien. A notarized memorandum by a Travelers' Claim Supervisor reports a telephone call placed by Attorney Haden on October 15, 1974 in which she assertedly asked how the proceeds should be divided. According to the memorandum, the supervisor told her that the matter had been referred to Travelers' attorney who would contact her. However, Travelers' attorney did not write Attorney Haden regarding the workmen's compensation lien until May 19, 1975. Attorney Haden telephoned on May 20, 1975

in response to the letter stating the case had been settled. On September 30, 1975, Travelers' attorneys sent another letter informing Attorney Haden that she and her client would be held liable for the lien. In her deposition, Attorney Haden denied any communication with Travelers regarding its lien.

At most, Travelers established Attorney Haden's knowledge of the prior workmen's compensation payments. Mere notice does not constitute an implied contract. Yet Travelers fails to prove conduct of all three parties (insurer, attorney, and client) showing a tacit understanding that Attorney Haden would withhold Travelers' share. *See, e. g., Richardson v. J. C. Flood Co.*, D.C.App., 190 A.2d 259 (1963). Even accepting Travelers' version of the facts, the carrier must bear the consequences of a distribution to the injured employee, since it failed to contact promptly the attorney regarding its lien. Travelers cannot now protest the disbursement of settlement proceeds.

The summary judgments for the District of Columbia and Attorney Haden are affirmed, and the judgment for Jesse Jones is reversed.

*Affirmed in part, and reversed in part.*