**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, Appellant,**

v.

**Wendell A. REID and Ronald G. Williams, Appellees.**

No. 93–CV–1695.

District of Columbia Court of Appeals.

Argued Jan. 12, 1995.

Decided Oct. 2, 1995.

Gina M. Householder, Baltimore, MD, with whom Michael D. Dobbs, Gaithersburg, MD, was on the brief, for appellant.

Christopher V. Tisi, Washington, DC, for appellee Williams.

Bruce F. Robertson, Washington, DC, filed a brief for appellee Reid.

Before WAGNER, Chief Judge, and STEADMAN and KING, Associate Judges.

STEADMAN, Associate Judge:

Appellee Ronald Williams, a bus driver for the Washington Metropolitan Area Transit Authority ("WMATA"), was injured when his bus was hit by a car driven by appellee Wendell Reid. WMATA voluntarily paid Williams workers' compensation act benefits.

On the last day before the statute of limitations would run, Williams filed suit against Reid, seeking damages for negligence. WMATA intervened in the action for the express purpose of protecting its workers' compensation lien.

In this appeal, WMATA asserts that the trial court abused its discretion in granting Williams's motion to dismiss the suit. Specifically, WMATA argues that because it had paid workers' compensation benefits to Williams, Williams should be not permitted to dismiss his claim after WMATA had intervened in the lawsuit. Alternatively, WMATA argues that the trial court should have substituted WMATA as plaintiff and assigned Williams's claim to WMATA, allowing it to proceed to trial on the claim. We affirm.

## I.

Ronald G. Williams was injured in an accident involving a vehicle driven by Wendell A. Reid that occurred on January 6, 1989, while Williams was driving a bus for WMATA. Subsequently, WMATA voluntarily paid workers' compensation benefits to Williams totaling $11,699.66. WMATA did not have this payment of benefits reduced to an official "award" or "order" of compensation by the District of Columbia Department of Employment Services ("DOES").

On January 6, 1992, the last day before the statute of limitations would run, Williams filed suit against Reid to collect damages resulting from Reid's alleged negligence. After discovery was completed and mediation was concluded, WMATA moved to intervene in the suit on August 13, 1993. WMATA stated in its motion to intervene that it had "a statutory lien on the proceeds of any judgment which may be rendered in favor of the Plaintiff" and that "[t]he purpose of this Motion to Intervene is to protect [WMATA]'s statutory workers' compensation lien." Neither party objected to the motion to intervene, and the trial court granted the motion on September 20, 1993.

Shortly before the scheduled pretrial conference, Williams "reassessed the risks and benefits of proceeding to trial." As a result, at the pretrial conference held on October 6, 1993, he indicated that he wished to dismiss outright his claim against Reid. Not surprisingly, Reid (who had not filed any counterclaims against Williams) agreed to this dismissal. WMATA did not, however, and the trial court ordered Williams to file a motion to dismiss and ordered the parties to present memoranda on the issue.

On October 14, 1993, Williams filed his motion to dismiss his claim against Reid. WMATA opposed this motion, and asked the trial court either to require Williams to proceed with his claim or to compel Williams to assign his claims to WMATA.

WMATA also sought a voluntary assignment from Williams. The parties apparently originally agreed to such an assignment, but then differences arose regarding the terms of the assignment.[1] Because these differences were not resolved, Williams did not assign his claims to WMATA.

The trial court dismissed the action against Reid pursuant to Super.Ct.Civ.R. 41(a)(2), and refused to substitute WMATA as a plaintiff for Williams. The trial court first noted that WMATA had "stated no independent cause of action against [Reid]." The court then found that WMATA had shown no basis for a compelled assignment. Although the statute provides for an assignment when the employee has been awarded compensation pursuant to an "award in a compensation order," see D.C.Code § 36–335(b), no such award had been issued in this case. Finally, the trial court found that WMATA would not be "unfairly prejudiced" by the dismissal. Specifically, the court noted that WMATA had failed to avail itself of any of the procedures for directly asserting its own claims, an indication "that it was not interested in pursuing an independent claim." WMATA noted this appeal.

1. Williams's counsel indicated, in a letter to WMATA's counsel, that Williams would agree to an assignment only if: (1) WMATA pursued all the claims available to Williams on his behalf, (2) WMATA protected Williams's interest if the award was less than or equal to the amount of the lien, and (3) WMATA reimbursed Williams for the attorney's fees and litigation expenses that he had incurred.

## II.

Before turning to the merits of WMATA's appeal, we briefly review the statutory scheme at issue here. Under the Workers' Compensation Act ("WCA"), an employee is generally barred from bringing a tort action against his or her employer to recover damages for injuries suffered on the job. *See* D.C.Code § 36–304 (1993 Repl.). However, this statutory scheme reflects a *quid pro quo* between employees and employers; it does not preclude all suits against third parties. *See Meiggs v. Associated Builders, Inc.*, 545 A.2d 631, 637 (D.C.1988), *cert. denied*, 490 U.S. 1116, 109 S.Ct. 3178, 104 L.Ed.2d 1040 (1989). An employee's ability to bring actions against a third party tortfeasor is governed by D.C.Code § 36–335 (1993 Repl.). Under this provision, an injured employee "need not elect whether to receive such compensation [under the WCA] or to recover damages against such third person." *Id.* § 36–335(a). If, however, the employee accepts compensation "under an award in a compensation order filed with the Mayor,"[2] the employee's acceptance "shall operate as an assignment to the employer of all rights of the person entitled to compensation to recover damages against such third person unless such person shall commence an action against such third person within 6 months after such award." *Id.* § 36–335(b). If the employer receives such a statutory assignment pursuant to a formal award, the employer "may either institute proceedings for the recovery of such damages or may compromise with such third person either without or after instituting such proceeding." *Id.* § 36–335(d).[3] .

If an employer institutes and succeeds on a suit against the third party, section 335(e) governs the distribution of the proceeds from the suit. The employer is entitled to retain the expenses and a reasonable attorney's fee for the proceedings, *id.* § 36–335(e)(1)(A); the cost of all benefits the employer furnished to the employee under section 36–307,[4] *id.* § 36–335(e)(1)(B); "[a]ll amounts paid as compensation," *id.* § 36–335(e)(1)(C); and "[t]he present value of all amounts thereafter payable as compensation," *id.* § 36–335(e)(1)(D). Any excess amount is to be divided between the employer and the employee, one-fifth to the employer and four-fifths to the employee. *Id.* § 36–335(e)(2).

If the employee "institutes proceedings" within the six-month period, as described in subsection (b), the employer remains liable for "the excess of the amount which the Mayor determines is payable on account of such injury or death over the amount recovered against such third person." *Id.* § 36–335(f). Finally, the statute provides that:

> If compromise with such third person is made by the person entitled to compensation or such representative of an amount less than the compensation to which such person or representative would be entitled under this chapter, the employer shall be liable for compensation as determined in subsection (f) of this section, only if the written approval of such compromise is obtained from the employer and his insurance carrier by the person entitled to compensation or such representative at the time of or prior to such compromise in a form and manner prescribed by the Mayor.

*Id.* § 36–335(g). Thus, the employer is protected against the possibility that an employee will, during the six-month period, compromise the claim against the third party to the prejudice of the employer's right to recover the amounts paid out in workers' compensation benefits.

---

**2.** The authority delegated to the Mayor under this section has been in turn delegated to the Director of DOES. *Lee v. DOES*, 509 A.2d 100, 102 n. 1 (1986).

**3.** The employer may elect, however, to do nothing with respect to the claim against a third party. Unlike some comparable acts in other jurisdictions, the WCA contains no provision for a reassignment to the employee in such circumstances. *Cf.* 33 U.S.C. § 933(b) (1988), *as amended by* Pub.L. No. 98–426 § 21(a) (1984) ("If the employer fails to commence an action against such third person within ninety days after the cause of action is assigned under this section, the right to bring such action shall revert to the [employee].").

**4.** This section governs the employer's responsibility to provide certain medical services and supplies and health insurance to an injured employee. *See* D.C.Code § 36–307 (1993 Repl.).

■ The statute is silent with respect to any lien that the employer may have against any recovery obtained by the employee against a third party.[5] However, it is well settled that an employer who has paid workers' compensation benefits has an equitable lien against any such recovery to the extent of such benefits. We very recently restated the relevant doctrine in *Williams, supra* note 5, in which Lumbermen's Mutual Casualty Company ("Lumbermen's") was the workers' compensation insurer for the employer:

> [I]n order to avoid double recovery by an employee, we have recognized an equitable lien in these circumstances. *See Travelers Ins. Co. v. Haden,* 418 A.2d 1078 (D.C. 1980). In *Travelers,* "on a theory of equitable lien," a workers' compensation carrier sought reimbursement from an employee of a corporation for whom, as its insurer, it had paid workers' compensation benefits. *Id.* at 1080. We recognized that "Travelers retained a right to reimbursement out of the settlement proceeds … [and that] if the employee ultimately succeeds in recovering from the third party, [Travelers] is protected by a lien on the proceeds." *Id.* at 1082.

*Williams,* 664 A.2d at 344–45. In *Williams,* the employee settled with the third party for $200,000, purportedly covering only noneconomic injuries and damage. *Id.,* 664 A.2d at 343. Nonetheless, "for the same policy reasons underlying our imposition of an equitable lien in *Travelers,* we conclude that Lumbermen's claim amounts to an equitable lien on Williams' settlement from the [third party]." *Id.,* 664 A.2d at 344–45.

We further explicated the nature of this equitable lien in discussing the obligation of the insurer to participate on a prior appeal:

> At the time of the judgment against [the employee in the first trial], Lumbermen's interest was inchoate…. [I]t held only an equitable lien on any recovery by [the employee], not a statutory right to recover

from the tortfeasor…. Lumbermen's lien on [the employee's] potential recovery from the [third party] could not be transformed from an inchoate interest to a present interest unless, and until, [the employee] received a judgment or settlement in his favor.

*Id.,* 664 A.2d at 346.

### III.

In the present action, WMATA had entered the litigation as an intervenor. In its motion to intervene, WMATA asserted that it sought to "intervene … as a matter of right," pursuant to Super.Ct.Civ.R. 24(a). In its order granting the motion, the trial court did not specify whether intervention was granted pursuant to Rule 24(a), intervention of right, or Rule 24(b), permissive intervention. Because WMATA had an equitable lien on any recovery by Williams, *see Travelers Ins. Co. v. Haden, supra* note 5, 418 A.2d at 1081, it appears that WMATA could properly intervene under rule 24(a), as a matter of right, in the underlying action. *See Mendenhall v. M/V TOYOTA MARU NO. 11,* 551 F.2d 55, 59 (5th Cir.1977) (employer who paid compensation under the Federal Employees' Compensation Act may intervene as of right in suit brought by employee against the third party tort feasor); *see also Travelers Ins. Co. v. District of Columbia,* 382 A.2d 269, 274 (D.C.1978) (before an equitable lien will be imposed, the employer or the employer's subrogee must "intervene[ ] and affirmatively assert[ ] a right to the settlement proceeds"). Accordingly, we will treat the trial court's motion as granting WMATA the right to intervene under rule 24(a).

Because WMATA had a right to intervene, our focus must turn to what rights it has with respect to a motion for a voluntary dismissal once it has intervened. For a party who has a right to intervene, "once intervention has been allowed, the intervenor is a party for all purposes." 3B JAMES W.

---

**5.** Hence, WMATA was in error in stating in its motion to intervene (and in its brief) that it was asserting a "statutory lien" under the WCA. *See Williams v. Lumbermen's Mut. Casualty Co.,* 664 A.2d 342, 344–45 (D.C.1995); *Travelers Ins. Co. v. Haden,* 418 A.2d 1078, 1081–82 (D.C.1980). To the extent that the automatic assignment provision of the act is operative, D.C.Code § 36–335(b), the rights transferred to the employer are absolute, subject to the provisions of the act requiring sharing of recovery with the employee of any excess recovered. D.C.Code § 36–335(e)(2).

MOORE, ET AL., MOORE'S FEDERAL PRACTICE ¶ 24.16 [6], at 24–160 (1995) (footnote omitted); *see also* 7C CHARLES A. WRIGHT, ARTHUR R. MILLER, & MARY K. KANE, FEDERAL PRACTICE AND PROCEDURE § 1920, at 488 (1986) ("Unless conditions have been imposed, the intervenor is treated as if he were an original party and has equal standing with the original parties." (footnote omitted)). Accordingly, "the original parties may not stipulate away the rights of the intervenor." 3B MOORE, *supra* ¶ 24.16 [6], at 24–161 (footnote omitted). However, "the sum of rights possessed by an intervenor, even if granted unconditional intervention, is not necessarily equivalent to that of a party in a case and depends upon the nature of the intervenor's interest." *Kirkland v. New York State Dep't of Correctional Servs.*, 711 F.2d 1117, 1126 (2d Cir.1983), *cert. denied*, 465 U.S. 1005, 104 S.Ct. 997, 79 L.Ed.2d 230 (1984). Furthermore, "[i]t has never been supposed that one party—whether an original party, a party that was joined later, or an intervenor—could preclude other parties from settling their own disputes and thereby withdrawing from litigation." *Local No. 93, Int'l Assoc. of Firefighters v. City of Cleveland*, 478 U.S. 501, 528–29, 106 S.Ct. 3063, 3078–79, 92 L.Ed.2d 405 (1986).[6]

■ Rule 41(a)(2) allows a plaintiff to dismiss his claims against the defendant "upon order of the Court." Super.Ct.Civ.R. 41(a)(2). In ruling on a voluntary dismissal motion, "the court's inquiry primarily concerns whether the defendant will be subjected to *legal prejudice* if the court grants the motion." *Washington Post Co. v. Clay Properties, Inc.*, 573 A.2d 1227, 1235 (D.C.) (internal quotation marks omitted; emphasis added), *vacated in part*, 580 A.2d 1042 (1990). To defeat a voluntary motion to dismiss, the opposing party must show that it will be "substantial[ly] prejudice[d]" if the dismissal is granted. *Andes v. Versant Corp.*, 788 F.2d

1033, 1036 (4th Cir.1986); *see also Conafay v. Wyeth Lab.*, 268 U.S.App.D.C. 295, 297, 841 F.2d 417, 419 (1988) (per curiam) (citing *id.*); *Nance v. Jackson*, 56 F.R.D. 463, 471 (M.D.Ala.1972) ("the essential question is whether the dismissal of the action will be unduly prejudicial to the defendants"). We review the grant of a voluntary dismissal for "an abuse of discretion," *Washington Post, supra*, 573 A.2d at 1234, and we will interfere with the trial court's exercise of its discretion only in extreme cases, *Beckwith v. Beckwith*, 379 A.2d 955, 959 (D.C.1977), *cert. denied*, 436 U.S. 907, 98 S.Ct. 2239, 56 L.Ed.2d 405 (1978).

■ The issue thus presented is whether such "legal prejudice" inured to WMATA as a result of the dismissal that the trial court abused its discretion in dismissing the suit.[7] In *Emmco Ins. Co. v. White Motor Corp.*, this court was faced with a subrogee's claim that it was prejudiced because the trial court had refused its request for a permissive intervention. 429 A.2d 1385, 1386 (D.C.1981). Before the court had ruled on the motion to intervene, the original parties settled the dispute and the plaintiff dismissed the case. *Id.* The trial court then denied the motion to intervene, noting that the motion had not been filed until discovery had already been completed and trial was to begin in less than a month. *Id.* The subrogee argued that it was prejudiced, an argument which this court, after noting that the subrogor could bring a private cause of action against the third party, addressed as follows:

> [A]ppellant would have been permitted to institute its own action against appellees, as a matter of course or upon denial of its application to intervene. However, because appellant waited so long to seek intervention after [plaintiff] filed his action against appellees, the statute of limitations had long since run, thus effectively barring

---

**6.** "[I]f properly raised, [any valid] claims [of the intervenor] remain and may be litigated by the intervenor." *Id.* at 529, 106 S.Ct. at 3079. In *Local No. 93*, the Court held that a consent decree could be entered, over the objection of the intervenor, where the intervenor "failed to raise any substantive claims." *Id.* at 530, 106 S.Ct. at 3079. As the Seventh Circuit has noted, "[t]he precise issue . . . is whether the [intervenor] really has a separate and distinct right or interest from the private plaintiffs." *Secretary of Labor v. Fitzsimmons*, 805 F.2d 682, 696 (7th Cir.1986) (en banc).

**7.** In the present case, the trial court found that WMATA would suffer no "unfair[ ] prejudice[ ]" if the motion to dismiss was granted.

appellant's right to maintain its own action. The prejudice suffered by appellant is that it must bear the loss of the $16,764.43 payment made to [plaintiff]. *It cannot be doubted that this was a foreseeable result of appellant's failure to act in a more timely fashion and should reasonably have been anticipated.*

*Id.* at 1387–88 (internal citations omitted; emphasis added). The court therefore held that the trial court did not abuse its discretion in dismissing the suit and refusing to allow the subrogee to intervene. *Id.* at 1386.

We find this reasoning equally applicable here, even though WMATA had already intervened in the action before the dismissal. Actual prejudice at a given point in time does not necessarily translate into legal prejudice. Our focus, therefore, is not limited to the obvious fact that WMATA has lost any right to recover its compensation payments from Reid, but rather must extend to consider the totality of circumstances, encompassing not only the status of WMATA with respect to the immediate litigation but also to the other avenues through which WMATA could have sought recovery and to WMATA's status with respect to Williams's third-party claim as a whole.

### IV.

As we shall demonstrate, we think the fatal weakness in WMATA's position is that it never undertook to establish any independent right against Reid and limited its intervention solely to protect its lien on the proceeds of any judgment that might be rendered in favor of the Plaintiff. WMATA's potential recovery was entirely derivative of any recovery by Williams. Therefore, the trial court did not abuse its discretion in allowing the dismissal and refusing to order a compelled assignment.

### A.

We begin by an examination of WMATA's rights against Reid quite apart from any action brought by Williams, distinguishing the worker's and the employer's causes of action under the statute. In a claim asserted by a worker, the worker "has exclusive control of the action." *Rodriguez v. Compass Shipping Co., Ltd.,* 451 U.S. 596, 600, 101 S.Ct. 1945, 1949, 68 L.Ed.2d 472 (1981).[8] "Included within the scope of the worker's control is the power to commence suit." *Hartford Accident & Indem. Co. v. Costa Lines Cargo Svcs.,* 903 F.2d 352, 358 (5th Cir.1990). In an action by the employee, any recovery by the employer is entirely derivative of the employee's success on the underlying claim. *See Williams, supra* note 5, 664 A.2d at 346 ("[The insurance carrier]'s lien on [the employee's] potential recovery from the [third party] could not be transformed from an inchoate interest to a present interest unless, and until, [the employee] received a judgment or settlement in his favor."); *see also Ceco Corp. v. Maloney,* 404 A.2d 935, 938 (D.C.1979) ("we do not deem the [employer] ... to be the real party in interest in this negligence suit [by the employee]").

If the claim becomes statutorily assigned to an employer, such as under the six-month provision, such an assignment "transfers the employee's entire right to commence a third-party action to the employer." *Rodriguez, supra,* 451 U.S. at 603, 101 S.Ct. at 1950. Accordingly, an employee has no recourse if, after an assignment, an employer does not pursue the employee's third-party claims. *Id.* ("Although their employers failed to pursue the assigned claims, the statute does not expressly require that employers pursue third-party claims, nor does it provide for relief to employees should the assigned claims lie dormant."). In sum, before an assignment occurs, an employee "has exclusive control of the action"; whereas after a proper assignment has been effectuated, an employer "has exclusive control of the litigation." *Id.* at 600–01, 101 S.Ct. at 1949–50.

Moreover, even absent assignment, an employer may have independent rights against a third-party tortfeasor. The existence of such an independent right buttresses the

---

**8.** This court has held that the *Rodriguez* Court's analysis of the assignment provisions of the Longshoremen and Harbor Worker's Compensation Act ("LHWCA") is binding precedent for the interpretation of the similar provisions of the D.C. Workers' Compensation Act. *Triplett v. George Hyman Constr. Co.,* 565 A.2d 83, 85 (D.C. 1989).

statutory principle allocating exclusive control of the employee's cause of action. Under the LHWCA,[9] the Supreme Court has held that the assignment language of the Act does not prohibit employers from pursuing an independent claim against the tortfeasor. *Federal Marine Terminals, Inc. v. Burnside Shipping Co.,* 394 U.S. 404, 412, 89 S.Ct. 1144, 1149, 22 L.Ed.2d 371 (1969) ("Nothing on the face of § 33 of the Act purports to limit the employer's remedy against third persons to subrogation to the rights of the [injured] employee's representative."). In *Burnside,* the Court noted that the shipowner owed the stevedoring company (the employer of the injured longshoreman) an independent duty of care—for example, the shipowner would be liable for any damage of the stevedore's equipment caused by the shipowner's negligence. *Id.* at 414–15, 89 S.Ct. at 1150. In such a case, the Court saw "no reason why the shipowner's liability does not in like fashion extend to the foreseeable obligations of the stevedoring contractor for compensation payments to the [longshoreman]." *Id.* at 415, 89 S.Ct. at 1150. *See also Pallas Shipping Agency, Ltd. v. Duris,* 461 U.S. 529, 538, 103 S.Ct. 1991, 1996, 76 L.Ed.2d 120 (1983) ("even without a statutory assignment of the longshoreman's claims, an employer can seek indemnification from negligent third parties for payments it has made to the longshoreman").

"A *Burnside* action is one by and for a wrong done the employer. The employee has no interest in the action." *Hartford, supra,* 903 F.2d at 358. The Fifth Circuit has explained the distinction between a *Burnside* claim and one for subrogation as follows:

> The subrogation right and *Burnside* claim are controlled by different players. Because the source of a subrogation right is the wrong done to a worker, the worker controls the claim to which the subrogation right attaches. Although the employer/carrier has a subrogation interest, absent statutory assignment, exclusive control of the action remains with the worker. Included within the scope of the worker's

control is the power to commence suit. The *Burnside* action, being an action based on a wrong directly to the employer, is the flip side of the coin—controlled by the employer/carrier.

*Id.* at 357–58 (footnotes, internal citations, and quotation marks omitted). A *Burnside* claim is "'an *independent* cause of action based on the third party's independent wrong to the employer.'" *Id.* at 357 (quoting *Peters v. North River Ins. Co.,* 764 F.2d 306, 320 (5th Cir.1985)). Furthermore, "there appears to be nothing to stop the employer from bringing his *Burnside* indemnity suit as soon as he has made his compensation outlay, with no concern whatever for whether the employee is or is not also bringing a direct suit against the third party." 2B ARTHUR LARSON, THE LAW OF WORKMEN'S COMPENSATION § 77.11, at 14–994 (1995).

This court has held that an employer may institute a *Burnside* action, provided that the employer can assert an independent wrong committed against the employer by the third party. *Travelers Ins. Co. v. District of Columbia, supra,* 382 A.2d at 271 (an assignment pursuant to a formal award "is not the exclusive source of an employer's (or insurance carrier's) remedies to recoup compensation payments from negligent third parties"). There we explained that in order to bring a *Burnside* action, the employer must show the existence of "a separate duty of care owed to the employer which was independent and distinct from the duty owed to the injured employee." *Id.* at 271; *see also Travelers Ins. Co. v. Haden, supra* note 5, 418 A.2d at 1082 n. 5 ("an employer who disburses compensation without an award may pursue any nonstatutory rights he may have against third party wrongdoers").

The situation here is closely analogous to that in *Burnside.* Reid would be liable to WMATA for any damages caused by his negligence to WMATA's bus, just as a shipowner would be liable to a stevedoring company for any damages to the stevedoring company's equipment. Just as the stevedor-

---

9. This court has held that Supreme Court cases interpreting LHWCA are "persuasive precedent" for interpreting the WCA. *Nguyen v. Liberty Mu-* *tual Ins. Co.,* 611 A.2d 541, 544 (D.C.1992) (internal quotation marks omitted).

ing company had a "foreseeable obligation" to pay workers' compensation, *see Burnside, supra,* 394 U.S. at 415, 89 S.Ct. at 1150, so did WMATA. Therefore, *Burnside* teaches that WMATA would have had the right, before the statute of limitations had run, to bring an independent cause of action.[10] However, WMATA never took any steps to initiate its own cause of action. It is significant that the action by Williams was filed on the last day possible before the statute of limitations ran. The circumstances make plain that WMATA had no plans to undertake any independent action or to pursue its rights apart from any possible action by the employee before the statute had run, as the trial court found.

### B.

Furthermore, WMATA's claim of legal prejudice is undermined by its failure to pursue assignment possibilities. WMATA failed to seek a formal compensation award for its voluntary payments to Williams, a requisite to the running of the six-month period under D.C.Code § 36–335(b). Under that provision, in order for an assignment to occur pursuant to this provision, there must be "an award in a compensation order," and the passage of six months without the filing of an action by the employee. It is not disputed that there was no such award or order in the present case. There are no other provisions of the statute that deal with assignments.

Here, WMATA made voluntary payments to the employee without a formal compensation order, a step that the act encourages. *See* D.C.Code § 36–315(a). WMATA argues that under *Thomas v. DOES,* 547 A.2d 1034

(D.C.1988), it was unable to obtain a hearing on the issue, and that requiring it to contest the payment of compensation in order to receive an award would undermine the "humanitarian purposes" of the statute. It is true that we held in *Thomas,* that an employee could not receive a hearing or a compensation order where the employer had been voluntarily paying compensation.[11] 547 A.2d at 1038. However, we explicitly declined to address the issue of whether an *employer* is entitled to a hearing and a formal award in order to protect its subrogation rights. *Id.* at n. 4. And, as this court said in *4934, Inc. v. DOES,* "[n]othing in the statute suggests that this presumption [of compensability] is intended to facilitate recovery against third parties by either the employer or the employee. In a case such as this, the humanitarian purpose of the statute is essentially irrelevant." 605 A.2d 50, 57 (D.C.1992).[12]

In *Pallas, supra,* the Supreme Court addressed arguments similar to those advanced by WMATA. 461 U.S. at 534, 103 S.Ct. at 1994. There, the employer contended that the voluntary payment of compensation, coupled with the filing of forms with the Department of Labor ("DOL"), amounted to an "award in a compensation order," resulting in an assignment of the employee's claim to the employer. *Id.* The Court rejected this reasoning, and noted that "[DOL] regulations permit an employer who makes voluntary payments to obtain a compensation order upon request if there is no disagreement among the parties." *Id.* at 538, 103 S.Ct. at 1996 (citing 20 C.F.R. § 702.315(a) (1982)). The regulations for DOES are quite similar to the DOL regulations referred to by the Supreme Court. *Compare* 20 C.F.R. § 702.315(a)[13] (1995) *with* 7 DCMR

---

**10.** The dismissal of Williams' claims would not have affected WMATA's ability to bring a *Burnside* action, if such an action was timely. *Cf. Local No. 93, supra,* 478 U.S. at 529, 106 S.Ct. at 3079 ("parties who choose to resolve litigation through settlement may not dispose of the claims of a third party").

**11.** The employee desired such an award so that the employer would be bound to make continued payments. *Id.* at 1035.

**12.** As we explained in that case, the humanitarian purpose of the workers' compensation statute

refers "specifically to the presumption of compensability ... which enables a claimant more easily to establish his or her entitlement to benefits and is intended to favor awards in arguable cases.... However, when it is undisputed that a claimant's injury arose out of his or her employment and is therefore compensable, the presumption is no longer part of the case because it is no longer necessary to effectuate the humanitarian purpose of the law." *Id.* (internal quotation marks and citations omitted).

**13.** That regulation provides:

§ 219.16 [14] (1986). Most of the DOES regulations regarding informal conferences mirror those of DOL. *Compare, e.g.,* 20 C.F.R. § 702.314(a) (1995) *with* 7 DCMR § 219.14 (1986). It is true that the DOL regulations, and not the DOES regulations, explicitly require the issuance of a formal order upon the request of either party, but there is nothing in the DOES regulations that would indicate that an employer would be unable to receive a similar order from DOES upon request, since DOES clearly "may" issue such an order. The DOES regulations may not be entirely clear as to whether WMATA could have invoked the procedure contemplated by the *Pallas* Court; however, WMATA made no effort to do so. For example, in *Thomas,* the petitioner had utilized the available administrative procedures. *See* 547 A.2d at 1035. In short, WMATA has failed to show that it was precluded from pursuing such a course of action. *Cf. Stroud v. Steininger,* 563 A.2d 1091, 1093 (D.C.1989) (per curiam) ("The general rule is that administrative remedies must be exhausted before judicial relief may be sought. The reasons behind the exhaustion doctrine seem particularly applicable in [a] context [which] ... requires interpretation of the agency's own regulations.").

Nonetheless, WMATA argues that the trial court should have required Williams to assign his claim to WMATA. We agree with the trial court that there is no statutory or policy basis for compelling an assignment. As already indicated, the statute provides for assignment only when there is an acceptance of compensation "under an award in a compensation order." D.C.Code § 36–335(b); *see Peters, supra,* 764 F.2d at 311 ("If a formal compensation award is not entered, the assignment provision of the [LHWCA] does not apply, even if the employer has

voluntarily made compensation payments, and the right to assert the worker's third-party cause of action remains with the worker."). Furthermore, WMATA at all times had the right to bring a *Burnside* claim, which it did not.

We, like the trial court, see no basis to compel an assignment at this time. As the Fifth Circuit noted, the claim by the employee is exclusively in the employee's control: "[i]ncluded within the scope of the worker's control is the power to commence suit." *Hartford, supra,* 903 F.2d at 358. "[S]tatutory assignment does not occur until a formal compensation order has been entered following administrative proceedings. Until that time, the employer is powerless to assert the worker's cause of action." *Peters, supra,* 764 F.2d at 317 (internal citations omitted). The fact that the employee has actually brought the suit does not provide any additional basis to force an assignment to which the employer would not otherwise be entitled.

In *Rodriguez, supra,* a claim similar to WMATA's was advanced by the *employees.* 451 U.S. at 603, 101 S.Ct. at 1950. They argued that they should be entitled to a compelled *re*assignment where the employer had failed to pursue the assigned third-party claims. *Id.* The Supreme Court, in rejecting this claim, noted that "[t]he comprehensive character of the procedures outlined in the Act precludes the fashioning of an entirely new set of remedies to deal with an aspect of a problem that Congress expressly addressed." *Id.* at 614, 101 S.Ct. at 1956 (footnote omitted).

In *Triplett, supra* note 8, an employee who received benefits pursuant to an order had brought suit against the negligent third par-

---

14. That regulation provides:

Following an informal conference at which agreement is reached on all issues, the Office shall, within ten (10) working days after conclusion of the conference, embody the agreement in a Memorandum; or within the (10) working days after conclusion of the conference the Office may issue a compensation order.

7 DCMR § 219.16 (1986).

---

Following an informal conference at which agreement is reached on all issues, the district director shall (within 10 days after conclusion of the conference), embody the agreement in a memorandum or within 30 days issue a formal compensation order, to be filed and mailed in accordance with § 702.349. If either party requests that a formal compensation order be issued the district director shall, within 30 days of such request, prepare, file, and serve such order in accordance with § 702.349.
20 C.F.R. § 702.315(a) (1995).

ty after the six-month period had expired, *i.e.*, after the claim had been statutorily assigned to the employer. 565 A.2d at 84. The employee argued that if the court were to find that his claim was time barred, the employer should be substituted as the plaintiff. *Id.* at 86 n. 5. This court held that "[w]e see no proper basis for doing so," thereby refusing to read alternative methods of assignment into the statute. *Id.*

Finally, we note that no obstacle existed to WMATA's at any time seeking a voluntary assignment by Williams of his cause of action. Only once Williams decided to dismiss the suit was such a step considered. The parties then apparently attempted to negotiate such an assignment, but the negotiations failed when the parties were unable to resolve differences concerning the terms of the assignment. See note 1, *supra*.

### C.

Several other considerations weigh in favor of the trial court's conclusion that WMATA was not "unfairly prejudiced" by the voluntary dismissal. The result we reach today is consistent with the purposes of the statute. It allows speedy payment of uncontested claims, while at the same time providing mechanisms, not followed here, to protect employers' rights against third parties. As the *Rodriguez* Court noted, Congress amended the LHWCA to allow for an assignment only when there was an acceptance of compensation pursuant to a formal award in order "to protect the employee from the harsh consequences of an improvident election." *Rodriguez, supra*, 451 U.S. at 605, 101 S.Ct. at 1951 (footnote omitted). Furthermore, as

noted in *4934, Inc., supra*, 605 A.2d at 57, the humanitarian purposes of the statute are not concerned with any recovery of damages from third parties. See note 12, *supra*. And the result we reach today does not interfere with "the policy behind allowing [an employer's equitable] lien," which is "to prevent a double recovery by the employee." *Williams, supra*, 664 A.2d at 346.

We also note that WMATA intervened nearly 19 months after the complaint had been filed and all discovery and mediation had been concluded. *See Emmco, supra*, 429 A.2d at 1387–88. The trial court granted WMATA's motion to intervene two weeks before Williams told the court that he desired to dismiss the action. Thus, WMATA had not, as of yet, devoted substantial resources to this litigation.

Finally, by the very terms of its complaint as intervenor, WMATA brought no independent claims against Reid. Rather, it intervened for the limited purpose of protecting its lien, and simply "request[ed] that th[e] court supervise the distribution of any monies which the Plaintiff may take as judgment against the Defendant for his negligence." *Cf. Local No. 93, supra*, 478 U.S. at 529, 106 S.Ct. at 3079 (claims properly raised by an intervenor survive any settlement between the original parties). Clearly, in the present case, the intervenor's recovery, if any, was wholly dependant on the plaintiff's success in the underlying suit.[15] *See Williams, supra* note 5, 664 A.2d at 346.[16]

Accordingly, we hold that the trial court did not abuse its discretion in granting the

---

**15.** We do not understand WMATA to assert that its intervention constituted an independent *Burnside* claim (or any other independent cause of action) against Reid, a situation which could raise a statute of limitations issue. *Cf. Sears, Roebuck & Co. v. Goudie*, 290 A.2d 826, 830 (D.C.1972) ("Courts have held that the assertion of a counterclaim must be viewed as an affirmative cause of action and should therefore be tested apart from the primary claim in determining whether the statute of limitations would bar the counterclaim."), *cert. denied*, 409 U.S. 1049, 93 S.Ct. 523, 34 L.Ed.2d 501 (1972).

**16.** This is not to say that the employee has a totally untrammeled hand. In *Williams*, we held that the employee's designation of its settlement proceeds as compensation for noneconomic injuries could not defeat the insurer's lien on the overall proceeds, since that would defeat the equitable purpose to prevent "double recovery." *Williams, supra* note 5, 664 A.2d at 347. We were thus defining the scope of the equitable lien. No claim is made here that the employee obtained any double recovery as a result of the dismissal.

voluntary dismissal and in refusing to mandate assignment of Williams' claims to WMATA.[17]

*Affirmed.*

---

17. We express no opinion with respect to any recourse that WMATA may have against Williams to recoup payments it made to him, under D.C.Code § 36–335(g) or otherwise. *But cf. Travelers Ins. v. Haden, supra* note 5, 418 A.2d at 1084 ("We find [§ 36–335](f) and (g) relevant to the employer's liability for *further* payments, not to the situation where, as here, the employee has received benefits without an award.... We conclude that the failure to secure consent [to a settlement] constitutes a defense to further liability [on the part of the insurer], not a means of reneging on benefits paid, particularly where, as here, the insurer was less than vigilant in protecting its subrogation rights before settlement.").