Peggy D. PANNELL–PRINGLE,
Petitioner,

v.

DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, Respondent.

Nursing Enterprises, Inc. and Liberty Mutual Insurance Company,
Intervenors.

No. 01–AA–3.

District of Columbia Court of Appeals.

Argued Jan. 24, 2002.
Decided Sept. 5, 2002.

Benjamin T. Boscolo, Greenbelt, MD, for petitioner.

Anton L. Iamele for intervenors. Donald P. Maiberger, Rockville, MD, was on the brief for intervenors.

Robert R. Rigsby, Corporation Counsel at the time the briefs were filed, and Charles L. Reischel, Deputy Corporation Counsel, filed a statement in lieu of brief for respondent.

Before TERRY and WASHINGTON, Associate Judges, and KERN, Senior Judge.

TERRY, Associate Judge:

Petitioner, Peggy Pannell–Pringle, seeks review of a final order of the District of Columbia Department of Employment Services ("DOES") which denied her application for workers' compensation benefits for injuries resulting from an automobile accident that occurred in the course of her employment. DOES ruled that petitioner's unauthorized settlement with the driver of the other car barred her claim for compensation under D.C.Code § 32–1535(g) (2001).[1] Petitioner argues that DOES erred in determining that this statute operates as a complete bar to a claim for compensation when no compensation order existed at the time of the settlement. We hold that DOES's interpretation of the statute is reasonable and therefore affirm the order under review.

I

Petitioner was involved in an automobile accident arising in the course of her employment on August 4, 1997. She notified her employer, Nursing Enterprises, Inc., of the accident promptly after it occurred and then went to the hospital. She was diagnosed with a sprained neck and returned to work later that day. Within a week after the accident, and before filing a workers' compensation claim, she entered into an agreement with the driver of the other car in which she settled her claim against him for $1,000. She did not notify either her employer or her employer's insurance carrier, Liberty Mutual Insurance Company, of the settlement.

Over the next nine months, petitioner's neck continued to bother her, but her doctors maintained the original diagnosis of a sprained neck. In March of 1998, however, doctors at Bayview Hospital diagnosed petitioner as having a "Jefferson fracture" in her neck. She underwent several surgeries and was absent from work from April 4, 1999, through August of 1999. She later filed a claim for workers' com-

---

1. Formerly codified as D.C.Code § 36–335 (1997).

pensation alleging that her disability was due to the August 1997 accident.

After a hearing on petitioner's claim, a hearing examiner found that the accident happened during the course of petitioner's employment and that it was the cause of her injuries. The examiner also ruled, however, that petitioner was barred from receiving total disability benefits [2] because her settlement with the third party was not authorized under D.C.Code § 32–1535(g).[3] Although the actual language of section 32–1535(g) did not mandate this result, the examiner held that he was bound by *Travelers Insurance Co. v. Haden*, 418 A.2d 1078 (D.C.1980), which interpreted a nearly identical provision in the Longshoremen's and Harbor Workers' Compensation Act as conclusively presuming prejudice when an employee enters into an unauthorized settlement.[4] In a lengthy footnote, the examiner stated that his preference would be to inquire into whether the employer was actually prejudiced by an unauthorized settlement because such an inquiry would further the "humanitarian" purpose of the statute. He concluded, however, that "this is a significant policy determination which, under the Act, must be left to the Director by interpretation, or the City Council by statutory revision."

Petitioner appealed from the examiner's decision to the Director of DOES, who affirmed the decision of the hearing examiner because he found that *Haden* was persuasive. Although the Director acknowledged that an inquiry into prejudice was "attractive," he concluded that there was "simply ... no language in D.C.Code § [32–1535](g) providing for an inquiry

into 'prejudice' in these cases." The Director reasoned that the drafters of the act had "used such qualifying 'prejudice' language when it was intended and deemed appropriate," but noted that they did not use that language here. Petitioner now maintains that the Director's interpretation was contrary to the statutory scheme.

## II

■ In reviewing an agency interpretation of a statute, this court follows the two-part test set out by the Supreme Court in *Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); *see, e.g., Timus v. District of Columbia Dep't of Human Rights*, 633 A.2d 751, 758–759 (D.C. 1993) (en banc). "First, the reviewing court must determine whether the meaning of the statute is clear." *Columbia Realty Venture v. District of Columbia Rental Housing Comm'n*, 590 A.2d 1043, 1046 (D.C.1991). If it is, "that is the end of the matter." *Chevron*, 467 U.S. at 842, 104 S.Ct. 2778. If the statute is ambiguous, however, we must defer to the agency's interpretation of the statutory language so long as it is reasonable. *Id.* at 842–843, 104 S.Ct. 2778; *see Smith v. District of Columbia Dep't of Employment Services*, 548 A.2d 95, 97 (D.C.1988) ("The agency's interpretation of the statute it administers is binding on this court unless it conflicts with the plain meaning of the statute or its legislative history").

### A. *The Plain Meaning of Section 32–1535*

Before 1980, persons employed in the District of Columbia were covered by

---

**2.** The hearing examiner did award petitioner compensation for her medical expenses.

**3.** D.C.Code § 32–1535(g) states that if there is a compromise between the employee and the third party, the employer is liable for workers' compensation "only if the written approval of

such compromise is obtained from the employer and his insurance carrier."

**4.** The examiner ruled that *Haden* was controlling under *Triplett v. George Hyman Construction Co.*, 565 A.2d 83 (D.C.1989).

workers' compensation under the Long-shoremen's and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. §§ 901 et seq. *See Triplett v. George Hyman Construction Co.*, 565 A.2d 83, 84–85 (D.C. 1989); D.C.Code §§ 36–501, 36–502 (1973). In 1980, however, the Council of the District of Columbia enacted the District of Columbia Workers' Compensation Act ("the Act"), which borrowed heavily from the LHWCA. *Nguyen v. Liberty Mutual Insurance Co.*, 611 A.2d 541, 544 (D.C. 1992). Section 36 of the Act, now codified at D.C.Code § 32–1535, was virtually identical to section 33 of the LHWCA (33 U.S.C. § 933) before that section was amended in 1984. As a result, cases interpreting 33 U.S.C. § 933 prior to 1984 may be treated as " 'persuasive' precedent" in determining the meaning of D.C.Code § 32–1535. *Nguyen*, 611 A.2d at 544 (citation omitted); *accord, e.g., Grayson v. District of Columbia Dep't of Employment Services*, 516 A.2d 909, 911 n. 2 (D.C.1986) (federal cases interpreting provisions of the LHWCA that are "virtually identical" to corresponding sections of the Act are "persuasive authority").

D.C.Code § 32–1535 allows a worker injured on the job by a third party to sue the third party without forfeiting the right to workers' compensation from his or her employer, so long as the amount recovered from the third party is less than the entitled employer compensation. D.C.Code § 32–1535(a), (b), and (f). Section 32–1535(g), however, prohibits the injured employee from recovering workers' com-

pensation benefits if the suit against the third party is settled without the written approval of the employer.[5] Although petitioner in this case settled her claim without the approval of her employer, she argues that D.C.Code § 32–1535, when read in its entirety, does not bar her claim because it does not apply to settlements when no compensation order has been filed.

Section 32–1535 states, in relevant part: *Compensation for injuries where third persons are liable.*

(a) If, on account of a disability or death for which compensation is payable under this chapter, the person entitled to such compensation determines that some person other than those enumerated in § 32–1504(b) is liable for damages, he need not elect whether to receive such compensation or to recover damages against such third person.

(b) Acceptance of such compensation under an award in a compensation order filed with the Mayor shall operate as an assignment to the employer of all rights of the person entitled to compensation to recover damages against such third person unless such person shall commence an action against such third person within 6 months after such award.

\*    \*    \*    \*    \*    \*

(f) If the person entitled to compensation institutes proceedings within the period ascribed in subsection (b) of this section, the employer shall be required to pay as compensation under this chap-

---

**5.** The purpose of the approval requirement is to prevent the employer from being prejudiced by a low settlement that would leave the employer liable for the remainder of the employee's entitled compensation. *See Travelers Insurance Co. v. Haden, supra*, 418 A.2d at 1083; *Morauer & Hartzell, Inc. v. Woodworth*, 142 U.S.App. D.C. 40, 42, 439 F.2d 550, 552 (1970); *Marlin v. Cardillo*, 68 App. D.C. 201,

204, 95 F.2d 112, 115 (1938). Approval is not required, however, when the suit has been resolved by a "judicial determination" of damages because that is considered to be "the independent evaluation of a trial judge." *Banks v. Chicago Grain Trimmers Ass'n*, 390 U.S. 459, 467, 88 S.Ct. 1140, 20 L.Ed.2d 30 (1968).

ter a sum equal to the excess of the amount which the Mayor determines is payable on account of such injury or death over the amount recovered against such third person.

(g) If compromise with such third person is made by the person entitled to compensation or such representative of an amount less than the compensation to which such person or representative would be entitled under this chapter, the employer shall be liable for compensation as determined in subsection (f) of this section, only if the written approval of such compromise is obtained from the employer and his insurance carrier by the person entitled to compensation or such representative at the time of or prior to such compromise in a form and manner prescribed by the Mayor.

Petitioner's argument focuses on the language in subsection (g) stating that the employer shall be liable for compensation "as determined in subsection (f) of this section." She maintains that this phrase limits the applicability of subsection (g) to situations in which, under subsection (f), persons "entitled to compensation institute[ ] proceedings within the period ascribed in subsection (b). . . ." Subsection (b), in turn, states that a person may institute proceedings against a third party within six months of accepting "compensation under an award in a compensation order filed with the Mayor." Petitioner reads these three sections together to

mean that an employee is not barred from receiving compensation under an unauthorized settlement when no compensation order has yet been filed—*i.e.*, that a compensation order must be filed before subsection (g) has any effect. The statute acts as a bar to recovery of workers' compensation benefits, she asserts, only when a case has been settled by the employee *after* the compensation order has been filed and the employer's rights have been subrogated.[6]

In cases in which the statute does not bar recovery, petitioner argues, the unauthorized settlement is a defense, and the examiner must determine whether the settlement prejudiced the employer by impairing its subrogation rights. *See Haden,* 418 A.2d at 1084 ("Absent a statutory consent requirement, the determinative question is whether the compromise prejudiced the employer by impairment of his subrogation rights"); *see also Chapman v. Hoage,* 296 U.S. 526, 529, 56 S.Ct. 333, 80 L.Ed. 370 (1936). Since no compensation order was ever issued in petitioner's case, she argues that the statutory bar of section 32–1535(g) does not apply, and that the case should be remanded to the agency so that the hearing examiner may consider the prejudice, if any, resulting from the settlement.

Although petitioner's interpretation is plausible, it is not compelled by the plain meaning of the statute, particularly when

6. Petitioner's argument is very similar to one made by Justice Blackmun in his dissenting opinion in *Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 492–495, 112 S.Ct. 2589, 120 L.Ed.2d 379 (1992). In *Cowart* the Court held that the injured employee was barred from compensation under 33 U.S.C. § 933(g) (as amended in 1984) because he was "a person entitled to compensation" within the plain meaning of the statute. *Cowart*, 505 U.S. at 477, 112 S.Ct. 2589. In his dissent, Justice Blackmun maintained that the plain

meaning of the statute actually entitled Cowart to both his settlement and full compensation benefits because there was no compensation order. *Id.* at 493–494, 112 S.Ct. 2589. In making this point, however, he stated, "The conclusion I draw is not that the Court should adopt a purely literal interpretation of the Act, but instead that the Court should recognize ... that the LHWCA must be read in light of the purposes and policies it would serve." *Id.* at 492, 112 S.Ct. 2589.

one looks at the Act in its entirety. *See K Mart Corp. v. Cartier, Inc.,* 486 U.S. 281, 291, 108 S.Ct. 1811, 100 L.Ed.2d 313 (1988) ("In ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole"). First, aside from the reference to subsection (f), subsection (g) contains strong language limiting the liability of the employer when the employee has entered into an unauthorized settlement. This language can reasonably be read as a reflection of the statutory purpose of preventing prejudice to the employer in the form of low settlements. See note 5, *supra.* Second, petitioner's interpretation is not "plain" in that it creates an unnatural double cross-reference: the reader must first refer to subsection (f) and then look back · at subsection (b). Most significantly, the statute itself does not support an inquiry into prejudice. As the Director noted, the drafters of the Act included explicit language when they intended to require an analysis of prejudice. *See, e.g.,* D.C.Code § 32–1513(d)(1) (stating that failure to give notice of injury or death will not bar compensation if the employer was aware of the injury and "has not been prejudiced by failure to give such notice"). Because no such language was included in section 32–1535, we cannot say that petitioner's interpretation is compelled by the statute's plain meaning.

■ These problems with petitioner's interpretation lead us to conclude that the statutory language is ambiguous. As a result, the Director's interpretation of D.C.Code § 32–1535 is not contrary to the plain meaning of the statute, and this court must uphold that interpretation as long as it is reasonable. *See Chevron,* 467 U.S. at 842–843, 104 S.Ct. 2778; *Smith,* 548 A.2d at 97.

### B. *The Director's Interpretation*

In addition to the statutory language, both the Director and the hearing examiner relied heavily on our decision in *Travelers Insurance Co. v. Haden, supra.*[7] *Haden* involved an employee who was injured when he fell into an open manhole. His employer paid him $4,254.76 for his injuries without a formal award. The employee then sued the District of Columbia (which owned the manhole) for damages and eventually settled for $1,500 without approval from his employer. The employer's insurance carrier, in turn, sued the employee under section 933(g) of the LHWCA, seeking to recover all of the compensation that had been paid to him.

The court noted that section 933(g) "prevents recovery by conclusively presuming prejudice to the claimant's employer, without requiring proof of actual prejudice." *Haden,* 418 A.2d at 1083 (quoting *Bell v. O'Hearne,* 284 F.2d 777, 780 (4th Cir. 1960)). The court held, however, that section 933(g) did not apply to the employer's claims for reimbursement of money received prior to settlement without a formal compensation award. *Id.* at 1084 ("We

7. *Haden* was brought under the LHWCA. The Director concluded that *Haden* was persuasive, but the hearing examiner ruled that it was binding under *Triplett v. George Hyman Construction Co., supra. Triplett* held, 565 A.2d at 85, that *Rodriguez v. Compass Shipping Co.,* 451 U.S. 596, 101 S.Ct. 1945, 68 L.Ed.2d 472 (1981) (holding that third party claims instituted under the LHWCA more than six months after a compensation award were barred), was binding precedent with respect to the interpretation of D.C.Code § 32–1535(b). *Triplett* did not hold, however, that any other cases interpreting other provisions of the LHWCA were binding. The hearing examiner was therefore incorrect in holding that *Triplett* required him to treat *Haden* as binding precedent with respect to D.C.Code § 32–1535(g).

find Sections (f) and (g) relevant to the employer's liability for *further* payments, not to the situation where, as here, the employee has received benefits without an award" (emphasis in original)). Because the statutory bar did not apply, the court inquired into the prejudice resulting from the settlement and concluded that the employer was entitled to reimbursement for the amount by which his subrogation right was impaired—in other words, the amount for which the claim was settled, but nothing more. *Id.*

The Director and the hearing examiner relied on the language in *Haden* stating that subsection (g) "conclusively presum[es] prejudice" when there is an unauthorized settlement. Petitioner argues that the Director's reliance on *Haden* is misplaced and that *Haden* actually supports her argument because it stands for the proposition that subsection (g) is not applicable when an employee has not received a compensation award. Thus, she contends, the appropriate analysis is whether the employer's subrogation rights have been impaired. Petitioner's reliance on *Haden* fails, however, because *Haden* held that the employer could not be reimbursed for unawarded compensation given before the settlement. The court specifically noted that subsection (g) was relevant to "the employer's liability for *further* payments." *Haden,* 418 A.2d at 1084. Because petitioner is claiming to be entitled to further compensation from the employer after the settlement, the reasoning in *Haden* is not applicable to her claim.

The Director's reliance on the language in *Haden* concerning the presumption of prejudice, however, is also somewhat misplaced. Because the court in *Haden* never applied section 933(g), the court's interpretation of the statute is dictum. As a result, *Haden's* reading of the statute is entitled to less weight, especially because

*Haden* involved a different (albeit similar) statute and thus was not controlling to begin with. We conclude nevertheless that the Director's interpretation of the statute was reasonable. First, even though the language about "conclusively presuming prejudice to the . . . employer" was dictum, *Haden* was still relevant authority. In interpreting the statute, the Director looked for, but was unable to find, any case law directly on point. *Haden* offered some guidance in that it addressed an identical provision in an act from which the language in our statute was derived. Furthermore, even though the passage in *Haden* on which the Director relied was dictum, it was quoted directly from a case in which the Fourth Circuit held that section 933(g) *was* a bar to an employee's claim for further benefits after a settlement. *See Bell v. O'Hearne,* 284 F.2d at 780. *Bell's* interpretation of the statute was not dictum, and thus was also persuasive authority under such cases as *Nguyen* and *Grayson.*

III

Given the ambiguity in the statute and the Director's reasonable reliance on *Haden,* we defer to his interpretation of the statute as we are obliged to do under *Chevron* and *Smith.* The decision of the Director is therefore

*Affirmed.*