**Sonya COLBERT, Petitioner,**

v.

**DISTRICT OF COLUMBIA DEPART-
MENT OF EMPLOYMENT SER-
VICES, Respondent,**

and

**Jewish Social Service Agency,
et al., Intervenors.**

**No. 06–AA–323.**

District of Columbia Court of Appeals.

Argued July 18, 2007.

Decided Oct. 11, 2007.

---

Jeffrey S. Larson, Greenbelt, MD, with whom Richard S. Basile was on the brief, for petitioner.

Robert J. Spagnoletti, Attorney General for the District of Columbia at the time the statement was filed, Todd S. Kim, Solicitor General, and Edward E. Schwab, Deputy Solicitor General, filed a statement in lieu of brief for respondent.

Francis H. Foley for intervenors.

Before KRAMER and FISHER, Associate Judges, and BELSON, Senior Judge.

FISHER, Associate Judge:

After she was injured in an automobile accident, Sonya Colbert received workers' compensation benefits. She also sued the driver of the other car, agreed to submit that dispute to arbitration, and received an award of $87,500 in damages. An Administrative Law Judge later held that Ms. Colbert had compromised her third party claim without her employer's authorization and therefore was barred from receiving further workers' compensation benefits for the effects of the accident. The Compensation Review Board affirmed, and Ms. Colbert petitioned for review. We affirm.

## I. Factual and Procedural Background

Petitioner Sonya Colbert worked for the Jewish Social Service Agency as a homemaker, assisting the elderly with "their daily living activities such as cleaning, shopping, cooking, and taking medi-

cations...." On February 3, 2000, she was driving to a client's home when she was "struck broadside on the driver's side by another automobile." She received temporary total and temporary partial disability benefits as a result of her work-related injuries.

On November 19, 2001, Ms. Colbert filed a civil complaint in the Superior Court against the driver of the other vehicle. The trial court referred the matter to mediation, but that effort was not successful, and the case was set for trial on July 11, 2003. Instead of going to trial, the parties agreed to submit the dispute to binding arbitration. They hired a retired judge from Prince George's County, Maryland, and presented their evidence to him over the course of three or four hours. Each party presented testimony and cross-examined the other side's witnesses, and Ms. Colbert presented documentary evidence. After closing arguments, the arbitrator awarded Ms. Colbert $87,500 in damages.

Ms. Colbert then turned to the administrative arena. After a hearing, the Administrative Law Judge held that Ms. Colbert "ha[d] met her burden of establishing entitlement to permanent total disability benefits." However, the ALJ also concluded that by agreeing to submit the case to arbitration, Ms. Colbert had "compromised" her claim against the other driver, within the meaning of D.C.Code § 32–1535(g) (2001). The employer did not have timely notice of the arbitration, nor did it give "written approval of such compromise." Id. Therefore, Ms. Colbert's "compromise of her third party claim without [the] employer's authorization bars her from receiving further compensation from the ... employer for the February 3, 2000 automobile accident...." However, Ms. Colbert was "entitled to reimbursement for causally related medical care." The CRB affirmed the ALJ's ruling that the arbitration was a compromise and that petitioner was barred from receiving further compensation.

## II. Legal Analysis

■ This appeal presents an issue of first impression for this court—whether agreeing to binding arbitration is a "compromise" of a claim for damages against a third person within the meaning of D.C.Code § 32–1535(g) (2001). Indeed, the parties' briefs and our research have not identified any decision throughout the country which answers this question with respect to a comparable statutory provision.

■ "In reviewing an agency interpretation of a statute, this court follows the two-part test set out by the Supreme Court in *Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)." *Pannell–Pringle v. District of Columbia Dep't of Employment Servs.*, 806 A.2d 209, 211 (D.C.2002) (citations omitted). "If the intent of [the legislature] is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of [the legislature]." *Timus v. District of Columbia Dep't of Human Rights*, 633 A.2d 751, 758 (D.C.1993) (en banc) (quoting *Chevron*, 467 U.S. at 842–43, 104 S.Ct. 2778). "If the statute is ambiguous, however, we must defer to the agency's interpretation of the statutory language so long as it is reasonable." *Pannell–Pringle*, 806 A.2d at 211. *Accord, Cathedral Park Condominium Committee v. District of Columbia Zoning Commission*, 743 A.2d 1231, 1239 (D.C.2000) ("We will defer to the agency's interpretation of the statute and regulations it administers unless its interpretation is unreasonable or in contravention of the language or legislative history of the statute and/or regulations."). " '[W]e need

not find that its construction is the only reasonable one, or even that it is the result we would have reached had the question arisen in the first instance in judicial proceedings.'" *Bausch v. District of Columbia Police & Firefighters' Retirement & Relief Board,* 926 A.2d 125, 129 (D.C.2007) (quoting *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965)).

▮▮▮ D.C.Code § 32–1535 (2001), the statute at issue here, provides, in relevant part:

### § 32–1535. Compensation for injuries where third persons are liable.

(a) If, on account of a disability or death for which compensation is payable under this chapter, the person entitled to such compensation determines that some person other than those enumerated in § 32–1504(b) is liable for damages, he need not elect whether to receive such compensation or to recover damages against such third person.

(b) Acceptance of such compensation under an award in a compensation order filed with the Mayor shall operate as an assignment to the employer of all rights of the person entitled to compensation to recover damages against such third person unless such person shall commence an action against such third person within 6 months after such award.

. . . .

(f) If the person entitled to compensation institutes proceedings within the period ascribed in subsection (b) of this section, the employer shall be required to pay as compensation under this chapter a sum equal to the excess of the amount which the Mayor determines is payable on account of such injury or death over the amount recovered against such third person.

(g) If compromise with such third person is made by the person entitled to compensation or such representative of an amount less than the compensation to which such person or representative would be entitled under this chapter, the employer shall be liable for compensation as determined in subsection (f) of this section, only if the written approval of such compromise is obtained from the employer and his insurance carrier by the person entitled to compensation or such representative at the time of or prior to such compromise in a form and manner prescribed by the Mayor.

This statute "allows a worker injured on the job by a third party to sue the third party without forfeiting the right to workers' compensation from his or her employer, so long as the amount recovered from the third party is less than the entitled employer compensation." *Pannell–Pringle,* 806 A.2d at 212 (citing D.C.Code § 32–1535(a), (b), and (f)). However, subsection (g) "prohibits the injured employee from recovering workers' compensation benefits if the suit against the third party is [compromised] without the written approval of the employer." *Id.* "The purpose of the approval requirement is to prevent the employer from being prejudiced by a low settlement that would leave the employer liable for the remainder of the employee's entitled compensation." *Id.* at 212 n. 5.

▮▮▮ The word "compromise" is not defined in the statute, but it "has generated discussion in several cases." *Travelers Insurance Co. v. Haden,* 418 A.2d 1078, 1083 n. 9 (D.C.1980) (citing cases). Interpreting a comparable provision of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 933(g), the Supreme Court held that a claimant's decision to accept a remittitur ordered by the trial judge was not a "compromise" of a third-party claim:

An order of remittitur is a judicial determination of recoverable damages; it is

not an agreement among the parties involving mutual concessions. Section 33(g) protects the employer against his employee's accepting too little for his cause of action against a third party. That danger is not present when damages are determined, not by negotiations between the employee and the third party, but rather by the independent evaluation of a trial judge.

*Banks v. Chicago Grain Trimmers Association, Inc.*, 390 U.S. 459, 467, 88 S.Ct. 1140, 20 L.Ed.2d 30 (1968). *See also Morauer & Hartzell, Inc. v. Woodworth*, 142 U.S.App. D.C. 40, 43, 439 F.2d 550, 553 (1970) ("In no way can this private compromise be considered a judicial determination."). "The crucial factor appears to be determination of damages by mutual agreement or negotiation between the parties, rather than by the independent evaluation of a trial judge." *Haden*, 418 A.2d at 1083 n. 9 (also interpreting 33 U.S.C. § 933(g)[1]). However, neither this court nor the Supreme Court has attempted a comprehensive definition of "compromise" in this context.

Focusing primarily on our statement in *Pannell–Pringle* that "[a]pproval is not required ... when the suit has been resolved by a 'judicial determination' of damages because that is considered to be 'the independent evaluation of a trial judge,'" 806 A.2d at 212 n. 5 (quoting *Banks*, 390 U.S. at 467, 88 S.Ct. 1140), the ALJ concluded that "[a]rbitration simply is not a judicial determination...." We agree. Although the parties in this case happened to choose a retired judge to serve as their arbitrator, he clearly was not acting in his judicial capacity.

It is more difficult to discern how this particular arbitration involved a "determination of damages by mutual agreement or negotiation between the parties," *Haden*, 418 A.2d at 1083 n. 9, or "an agreement among the parties involving mutual concessions." *Banks*, 390 U.S. at 467, 88 S.Ct. 1140. *See also* BLACK'S LAW DICTIONARY 305 (8th ed.2004) (defining a compromise as "an agreement for the settlement of a real or supposed claim in which each party surrenders something in concession to the other"). As noted, however, we have not adopted a comprehensive definition of the term "compromise," and a recently-published dictionary defines the noun more broadly as a "settlement of differences by arbitration or by consent reached by mutual concessions." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 256 (11th ed.2005). We, of course, do not treat this definition as binding, but it does tend to confirm that the agency's interpretation is reasonable.

As DOES recognized, " § 32–1535(g) contains strong language" which "reflects the statutory purpose of preventing prejudice to the employer in the form of low settlements." CRB Order at 4, citing *Pannell–Pringle*, 806 A.2d at 214. Ms. Colbert did not negotiate the amount of damages, but she may have limited her chances of a higher recovery by agreeing to arbitration. Instead of calling medical experts to testify (and incurring the expense involved), the parties submitted medical records to the arbitrator. This might have made her case seem less compelling. Furthermore, by agreeing to arbitration, she gave up, for all practical purposes, a right of appeal. In addition,

---

1. "Before 1980, persons employed in the District of Columbia were covered by workers' compensation under the Longshoremen's and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. §§ 901 *et seq.* In 1980, however, the Council of the District of Columbia enacted the District of Columbia Workers' Compensation Act ... which borrowed heavily from the LHWCA." *Pannell–Pringle*, 806 A.2d at 211–12 (citations omitted).

the parties chose the arbitrator without input from the employer. There is no way of knowing whether Ms. Colbert would have recovered more damages by going to trial in the Superior Court and, if necessary, exercising her right of appeal to this court. One thing is certain, however: the employer's voice was not heard when these decisions were made.

Ms. Colbert "concedes that certain types of arbitration agreements might require the employer's consent." These might include, for example, arbitrations in which the parties had signed a "high-low" agreement limiting the range of damages that might be awarded. There was no such agreement here, however, and Ms. Colbert urges us to determine through case-by-case adjudication which varieties of arbitration amount to compromises and which do not. But this surely is an area where the certainty and predictability of a bright-line rule are much to be preferred.

The rule adopted by DOES obviously serves the statutory purpose of preventing prejudice to the employer. On the other hand, it does not preclude the claimant and the third party from resorting to arbitration if they believe it offers a more speedy or economical means of resolving their dispute. They simply must notify "the employer and his insurance carrier" and obtain their "written approval" in advance. D.C.Code § 32–1535(g). Moreover, "[i]n a case such as this [requiring interpretation of subsection (g)], the humanitarian purpose of the statute is essentially irrelevant." *4934, Inc. v. District of Columbia Dep't of Employment Servs.*, 605 A.2d 50, 57 (D.C.1992) (cited in CRB Order at 4).

Neither the plain language of the statute nor the relevant case law compelled the conclusion reached by DOES, but that is not the question before us. Where, as here, the statute is ambiguous, "we must defer to the agency's interpretation of the statutory language so long as it is reasonable." *Pannell–Pringle*, 806 A.2d at 211. The interpretation at issue here is reasonable, and the order of the Compensation Review Board is hereby

*Affirmed.*