*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 17-AA-756

BRYANT MOORE, PETITIONER,

V.

DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, RESPONDENT,

and

MARSHALL HEIGHTS COMMUNITY DEVELOPMENT, INTERVENOR.

Petition for Review of a Decision and Order of the Compensation Review Board
of the District of Columbia Department of Employment Services
(CRB-107-15)

(Argued October 9, 2018                                     Decided July 3, 2019)

Bryant Moore, *pro se*.

*Karl A. Racine*, Attorney General for the District of Columbia, *Loren L. AliKhan*, Acting Solicitor General at the time the statement was filed, and *Stacy L. Anderson*, Senior Assistant Attorney General, filed a statement in lieu of brief for respondent.

*Gerard J. Emig*, with whom *Nathan J. Postillion* was on the brief, for intervenor.

Before FISHER and EASTERLY, *Associate Judges*, and RUIZ, *Senior Judge*.

FISHER, *Associate Judge*:  Bryant Moore injured his back in a 2008 car crash

while working for Marshall Heights Community Development Organization, Inc.

("Marshall Heights"). An administrative law judge ("ALJ") dismissed Moore's claim for workers' compensation benefits, and the Compensation Review Board ("CRB") agreed. In an unpublished memorandum opinion and judgment, this court affirmed the CRB's rulings on the two issues that the board had analyzed under D.C. Code § 32-1535 (2012 Repl.) (entitled "Compensation for injuries where third persons are liable"). *See Moore v. District of Columbia Dep't of Emp't Servs.*, No. 15-AA-1293, Mem. Op. & J. at 2–3 (D.C. May 11, 2017).[1] However, we remanded to allow the CRB to address a third argument discussed by the ALJ and preserved for review: whether, by receiving an unapproved settlement from a third-party tortfeasor, "Moore had lost his right to payment for medical services in addition to any right to disability payments." *Id.* at 3-4. The CRB answered that he had, and we affirm.

## I. Background

In March 2010 the Office of Workers' Compensation authorized Moore to visit a neurosurgeon and receive medical reimbursements related to the injuries he

---

[1] The appellant unsuccessfully had argued that the statutory subsection should not apply to his case because (1) the settlement only covered emotional distress, pain, and suffering and (2) Marshall Heights lacked workers' compensation insurance at the time of the injury.

sustained in the car accident. Marshall Heights made periodic payments to Moore for lost wages and medical benefits that totaled $15,325.73. (The organization had terminated Moore in March 2009 because it no longer had grant funding for his position.) Moore also sued the parties allegedly responsible for the accident and procured a $15,000 settlement, unbeknownst to Marshall Heights. In June 2012 Moore sought further payments through the Office of Workers' Compensation. After Marshall Heights discovered that Moore had settled with third parties, it moved to dismiss the claim.

Although Moore acknowledges that Marshall Heights did not approve his third-party compromise, he contends that the word "compensation" does not encompass medical benefits. The CRB — a panel within the Department of Employment Services — disagreed in a decision issued on June 16, 2017. Adopting statutory interpretation conducted by the ALJ, and focusing especially on the provisions of § 32-1535(e), the board concluded that the result advocated by Moore "is illogical and the statute simply cannot be read this way." Therefore, it said, Moore's unauthorized settlement absolved Marshall Heights from liability for all further payments. Moore again petitioned for review.[2]

---

[2] Moore raises additional arguments in his brief that he did not address to the agency. Since "[c]laims not properly preserved in the administrative setting are

(continued…)

## II. Legal Analysis

This court reviews an agency's interpretation of a statute that it administers using the two-part test of *Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984). *See, e.g.*, *Colbert v. District of Columbia Dep't of Emp't Servs.*, 933 A.2d 817, 819 (D.C. 2007). "If the intent of [the legislature] is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of [the legislature]." *Timus v. District of Columbia Dep't of Human Rights*, 633 A.2d 751, 758 (D.C. 1993) (en banc) (quoting *Chevron*, 467 U.S. at 842–43). "If the statute is ambiguous, however, we must defer to the agency's interpretation of the statutory language so long as it is reasonable." *Pannell-Pringle v. District of Columbia Dep't of Emp't Servs.*, 806 A.2d 209, 211 (D.C. 2002) (citing *Chevron*, 467 U.S. at 842–43). The court looks not only to the specific language in question but also to the statute as a whole. *See id.* at 214.

---

(…continued)
generally considered forfeited," *Black v. District of Columbia Dep't of Human Servs.*, 188 A.3d 840, 847 (D.C. 2018), we will not consider those contentions.

When an employee is injured by a third party, he or she "need not elect" at the outset between pursuing civil damages from the tortfeasor and receiving compensation under the statute. *See* D.C. Code § 32-1535(a). However, if the injured person accepts workers' compensation, he must file any action against the third person within six months after the award. *See id.* § 32-1535(b). If the worker does not timely sue the third person, his acceptance of "an award in a compensation order" operates "as an assignment to the employer of all [his] rights . . . to compensation to recover damages against such third person." *Id.*[3] Double recovery is not allowed in either scenario.[4]

If the claim has been assigned to the employer, it may pursue reimbursement from third parties by seeking a judgment or entering into a compromise. *See id.*

---

[3] After the events relevant here took place, the Council of the District of Columbia added that the cause of action is assigned back to the injured person if the employer has not acted within ninety days of the original assignment. *See* Workers' Compensation Statute of Limitations Amendment Act of 2014, 2014 D.C. Sess. Law Serv. 20-159 (West).

[4] "[I]t is well settled that an employer who has paid workers' compensation benefits has an equitable lien against any such recovery to the extent of such benefits." *Washington Metro. Area Transit Auth. v. Reid*, 666 A.2d 41, 44 (D.C. 1995). The purpose of the equitable lien is "to avoid double recovery by an employee." *Id.* (citation omitted). It is "elementary that the claimant should not be allowed to keep the entire amount both of his or her compensation award and of the common-law damage recovery." 10 Lex K. Larson, *Larson's Workers' Compensation Law* § 110.02, at 110-3 (2018).

§ 32-1535(d). The statute entitles the employer to retain "[a]ll amounts paid as compensation" and "[t]he cost of all benefits" spent on medical services, both present and future, as well as attorney's fees and other expenses. *Id.* § 32-1535(e)(1). If a surplus remains from the amount paid by the third party, the employer must pay four-fifths of the excess to the employee. *See id.* § 32-1535(e)(2).

Of course, the injured person may file a third-party action if he or she does so within the time allowed. If the worker receives a judgment against the third person, the amount of any workers' compensation award is reduced accordingly. "[T]he employer shall be required to pay as compensation under this chapter a sum equal to the excess of the amount which the Mayor determines is payable on account of such injury or death over the amount recovered against such third person." *Id.* § 32-1535(f). Compromises, including settlements, are treated differently. If the worker accepts "an amount less than" the workers' compensation to which he would be entitled, "the employer shall be liable [for the difference] only if the written approval of such compromise is obtained from the employer and his insurance carrier . . . at the time of or prior to such compromise." *Id.* § 32-1535(g).

We twice have addressed the impact of unauthorized settlements, interpreting the language of § 32-1535(g) strictly to bar further recovery from the employer. In *Pannell-Pringle* this court held that an unauthorized settlement barred a claim for future disability benefits even if the settlement occurred before the agency issued a compensation order. *See* 806 A.2d at 215. We also have held that engaging in arbitration without employer approval is a "compromise" that triggers the statutory bar. *See Colbert*, 933 A.2d at 822. The court in both cases reviewed only the employee's claim that she had improperly been denied wage-loss benefits. Although the ALJ in each case had awarded compensation for medical expenses, *see id.* at 819; *Pannell-Pringle*, 806 A.2d at 211 n.2, we did not rule on that issue because the respective employers did not challenge those awards.

This case centers on the meaning of "compensation" in § 32-1535(g), which states:

> If compromise with such third person is made by the person entitled to compensation or such representative of an amount less than the compensation to which such person or representative would be entitled under this chapter, *the employer shall be liable for compensation* as determined in [§ 32-1535(f)], *only if* the written approval of such compromise is obtained from the employer and his insurance carrier by the person entitled to compensation or such representative at the time of or

prior to such compromise in a form and manner prescribed by the Mayor.

D.C. Code § 32-1535(g) (emphasis added).

We conclude that the meaning of "compensation" in § 32-1535(g) is ambiguous. The definitional section of the chapter identifies "compensation" as "the money allowance payable to an employee or to his dependents as provided for in this chapter, and includes funeral benefits provided herein." *See* D.C. Code § 32-1501(6). This definition is not confined to wage-loss benefits, but it does not expressly refer to medical services. Section 32-1535(e) also refers separately to medical "benefits actually furnished by [the employer] to the employee" and "[a]ll amounts paid as compensation." *Id.* § 1535(e)(1)(B)–(C).

This court has explored the distinction between wage-loss benefits and medical benefits in different scenarios. In *Santos v. District of Columbia Dep't of Emp't Servs.*, 536 A.2d 1085, 1089 n.6 (D.C. 1988), the court compared the text of current § 32-1507 (medical services) and § 32-1508 (compensation for disability) and concluded that an employee's medical benefits could continue even after she

no longer remained eligible for wage-loss benefits.[5]  We noted that the employer's responsibility to provide medical services under § 32-1507 exists "for such period as the nature of the injury or the process of recovery may require," an expansive definition that does not appear in § 32-1508.  *Id.*  "The right to medical benefits is separate and distinct from the right to income benefits," the court held in that context.  *Id.*; *see also Davis-Dodson v. District of Columbia Dep't of Emp't Servs.*, 697 A.2d 1214, 1220 (D.C. 1997) (holding the same).  Finally, the court found "no indication" that the legislature intended to limit employer liability for medical benefits to the time during which an employee received wage-loss benefits.  *Santos*, 536 A.2d at 1089 n.6.

However, this court has recognized that the portion of the statutory scheme governing when compensation shall commence "specifically refers to medical benefits as encompassed within the meaning of compensation."  *C & P Tel. Co. v. District of Columbia Dep't of Emp't Servs.*, 638 A.2d 690, 694–95 (D.C. 1994) (construing language currently found in D.C. Code § 32-1505(a):  "No

---

[5]  The statute defines the term "disability" as "physical or mental incapacity because of injury which results in the loss of wages."  D.C. Code § 32-1501(8).

compensation shall be allowed for the first 3 days of the disability, except the benefits provided for in § 32-1507," the medical services provision).[6]

The court reviewed another part of the workers' compensation statute, the notice provision, in *Safeway Stores, Inc. v. District of Columbia Dep't of Emp't Servs.*, 832 A.2d 1267 (D.C. 2003). The provision stated: "Notice of any injury or death in respect of which compensation is payable under this chapter shall be given within 30 days after the date of such injury or death . . . ." D.C. Code § 32-1513 (2001). Petitioner had failed to give timely notice of a work-related injury to her employer, who argued that she should not be entitled to either wage-loss or medical benefits. *See* 832 A.2d at 1268–69. DOES determined that causally related medical expenses do not constitute "compensation" for the purposes of the notice provision, and this court affirmed. *See id.* at 1269. Therefore, the employee's failure to give adequate notice of an injury did not preclude her from obtaining medical benefits even though she was barred, under § 32-1513, from receiving wage-loss benefits. *See id.* at 1271.

---

[6] Section 32-1507(a) lists many examples of "medical, surgical, [and] vocational rehabilitation services" that an employer must provide, including "nurse and hospital service," "medicine," and "crutches."

Such cases illustrate the context-specific meaning of the word "compensation." Just as *Santos* considered legislative intent in reviewing one portion of the workers' compensation statute, *Pannell-Pringle* noted that § 32-1535(g) "contains strong language limiting the liability of the employer when the employee has entered into an unauthorized settlement." 806 A.2d at 214. Thus, § 32-1535(g) "can reasonably be read as a reflection of the statutory purpose of preventing prejudice to the employer in the form of low settlements." *Id.* Since the language of the statute does not plainly answer the question before us, we must ask if the CRB reasonably interpreted "compensation" in § 32-1535(g) to include medical costs.

We conclude that it did. In the original compensation order, the ALJ reasoned that allowing an employee to continue receiving medical benefits from an employer after the employee has compromised a claim against a third party without the employer's consent would allow the employee to receive double compensation and render the consent requirement meaningless by defeating the employer-protective purpose of § 32-1535(g). Specifically, the ALJ also noted that § 32-1535(e) provides that an employer who has been assigned a claim against a third party and recovers some amount of money from the third party may retain the

value of past and future wage-loss payments *and* medical benefits paid to the employee.

If the term "compensation" did not include medical benefits, the employee could continue to receive those benefits from the employer in "the scenario in the case at bar" even after he had been compensated by the third party. Commenting that subsection (g) "cannot be read in a vacuum," the ALJ stated that it would be "illogical" to allow an employer to recover from a third party the medical benefits that it had paid to the employee (per subsection (e)) while allowing an employee "to extinguish that opportunity" under subsection (g). The ALJ also found it would be "inconsistent" to have the employer be "entitled to reimbursement for medical benefits from a third-party" yet "remain liable to claimant for such benefits following an unauthorized settlement" of that claim. These illogical and inconsistent results would obtain if a "claimant could settle his or her claim against the third-party without consequence to the right to receive future medical care, while not protecting the employer's right as to the third-party." The ALJ concluded that this interpretation "aligns with the Court of Appeals['] reasoning in *Pannell-Pringle* — the employer is not prejudiced by a low settlement."

In its compensation order on remand, the CRB adopted and relied on the ALJ's reasoning, stating that "the purpose of D.C. Code § 32-1535(g) is to protect the employer from being prejudiced by unauthorized low settlements, thereby precluding the employer from receiving reimbursement from the liable third party for *all* benefits paid by the employer." It also reiterated the ALJ's concern that to interpret the term "compensation" more narrowly "would allow Claimant to continue seeking medical benefits from Employer, while Claimant received the value of those benefits" from his third-party settlement. The CRB added that medical benefits "could possibly be the most costly portion of Claimant's workers' compensation benefits."[7]

We agree with the CRB's analysis based on the twin goals of avoiding double recovery by the employee and preventing prejudice to the employer by settlements that compromise the employer's lien. It is reasonable to conclude that unauthorized settlements that would permit either result bar an employee's claims for any further benefits under the statute. Given the ambiguity of the statutory term "compensation" and the reasonableness of the CRB's contextual interpretation in light of the statutory purpose, we defer to that interpretation and

---

[7] Hospital and medical bills compose about sixty percent of workers' compensation benefits paid nationwide. *See* 8 Larson § 94.01[1], at 94-3 (citing a 2015 report).

hold that, under D.C. Code § 32-1535(g), a workers' compensation claimant who enters into a general settlement with a third-party tortfeasor without first obtaining the employer's consent forfeits the right to receive both wage-loss benefits and medical benefits from the employer.[8]

### III. Conclusion

Because the CRB reasonably interpreted "compensation" in D.C. Code § 32-1535(g) to include medical costs, its order is hereby

*Affirmed.*

---

[8] It is possible that a settlement agreement might not implicate either concern because it expressly includes compensation for only certain claims, e.g., medical benefits or disability benefits, without releasing other claims, such that the employee is not being paid twice and the employer's lien is not being compromised. This, however, is not the "scenario in the case at bar" to use the ALJ's phrase. Petitioner has not provided a copy of the settlement agreement. However, a letter from petitioner's counsel, noted by the ALJ, indicates that at least part of the settlement with the third-party tortfeasor was for medical services. As the employer argued to the CRB, the "employer would lose this protection" of § 32-1535(g) "if the claimant, as the claimant did herein, can use the medical bills paid by the employer as a foundation for his recovery in a third-party claim." The amount of settlement, $15,000, also corresponds with payments in the amount of $15,325 made by the employer to petitioner that included both disability and medical benefits.